THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAYMOND WARNER, Defendant-Appellant.

First District (5th Division)    No. 82—2717

Opinion filed January 20, 1984.

James J. Doherty, Public Defender, of Chicago (Donna Hickstein-Foley, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Sara Dillery Hynes, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SULLIVAN delivered the opinion of the court:

Following a jury trial, defendant was convicted of attempted murder, armed robbery, armed violence, and two counts of aggravated battery. He was sentenced to concurrent terms of 12 years for attempted murder and armed robbery, but the court vacated the armed violence conviction and imposed no sentence on the aggravated battery convictions, finding that they merged into the attempted murder offense. On appeal, not contending that the evidence was insufficient to establish his guilt beyond a reasonable doubt, defendant argues that he was denied a fair trial by admission of evidence that he refused to give a voice exemplar at a police lineup and because the prosecutor commented that this refusal constituted a tacit admission of guilt.

The complaining witness, Gerald Alexander (Alexander), testified that he was parking his car near his home shortly after midnight when he was passed by a car containing two men he had seen in the neighborhood on previous occasions. He saw the passenger, whom he identified as defendant, rise up in the seat and look at him. The car pulled over and stopped a short distance up the street, and while walking toward his house he heard someone from behind say, "Hey you." When he turned, defendant grabbed him, wrestled him to the ground, and ripped his wallet from his pocket. He kicked defendant in the face, hollered for help, and while he was on the ground he was shot by the driver of the car who was standing 25 to 30 feet away. When his stepson, Gregory Nolan (Nolan), came out of the house the men ran to their car, which was driven away. A few days later, at the hospital, he identified a person as the driver of the car and as the

man who shot him, but he did not tell the police then that he had recognized defendant from the neighborhood. Almost two years later, he viewed a police lineup and identified defendant as the man who attacked him. During his direct examination, he was asked whether all five men in the lineup were asked to say, "Hey you," and he answered that defendant refused to say anything. At that point, defense counsel said, "Objection, Judge. May I have a sidebar?" In the discussion that followed, he moved for a mistrial, arguing that the State was improperly attempting to use defendant's constitutionally protected silence as a tacit admission of guilt, and that he (counsel) was unfairly surprised by introduction of this evidence because he had received no notice of it during discovery. The trial court denied the motion since there was no objection prior to the answer and because a police report provided forewarning that the persons in the lineup had been asked to say those words.

Nolan, Alexander's stepson, then testified that on the night in question he heard his nephew shout that someone was "jumping on Alex," and when he ran outside, he saw two men standing over his stepfather. He chased them as they ran toward their car which was double-parked up the street with its engine running, doors open, and lights on. He was within seven feet of them when they turned, looked at him, jumped into their car, and drove away. He had seen defendant in the neighborhood at least 10 times before but did not know his name. When the police arrived, he gave them a description of the shorter of the two men, but he did not recall giving them any other description or telling them that he recognized defendant from the area. Later that afternoon, he and his brothers saw defendant at a neighborhood tavern, but when they returned with the police, he (defendant) was gone. They then went to a house where defendant allegedly lived, and he (Nolan) identified a man named Michael as one of the two men he had chased the previous night. Two days later, he identified defendant from a set of police photographs as the other person he chased, and almost two years later he identified defendant in a police lineup as one of the two men involved in the attack on Alexander.

Hurrell Ellis (Ellis), the victim's grandson, testified that on the night of the incident he heard a gunshot, looked out the window, and saw a man whom he identified as defendant wrestling with his grandfather. Two days later, he picked out defendant's picture from a group of police photographs and identified him as his grandfather's assailant.

Officer Rothgeb testified that Nolan identified defendant from the

police photographs but stated that he did not show those pictures to Alexander. During the two years between the commission of the offense and defendant's arrest, he and his partner made numerous unsuccessful attempts to locate defendant.

Detective Kondall testified that on the day after defendant's arrest, he conducted two police lineups in which Alexander and Nolan separately identified defendant as the offender. The men in the lineups were asked to say the words "Hey you," and although his report indicated that defendant refused to say the words in front of Nolan, it did not indicate, and he did not recall, whether defendant had also refused to say them in front of Alexander.

In rebuttal argument, the prosecutor said:

> "It's in the police reports that he refused to say 'Hey you.' It's in the police reports that he refused to say it to Gregory Nolan. Now a refusal for one person or refusal for two is the same as far as the meaning goes. When is the meaning? Well, this man didn't want to say 'Hey you.' If inference can be drawn from this, he didn't say 'Hey you' because he thought his voice would be recognized."

Following this argument, defense counsel unsuccessfully renewed his motion for a mistrial.

OPINION

Defendant first contends that he was denied a fair trial by admission of evidence that he refused to say "Hey you" for purposes of voice identification during the lineup, and by prosecutorial comments that this refusal raised an inference of his consciousness of guilt.

■ Initially, we note that defendant does not claim, as he did at trial, that his refusal to speak was a valid exercise of his constitutional right to remain silent. It is well settled, and defendant does not now dispute, that voice exemplars are not testimonial statements within the scope of fifth amendment protection; rather, they are categorized as noncommunicative "real or physical" evidence of which defendant is merely the source. (*Schmerber v. State of California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826.) Thus, compelling an accused to provide a sample of his voice as an identifying physical characteristic does not violate his constitutional privilege against self-incrimination. *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926.

Defendant maintains, however, that his silence in these circumstances, while not constitutionally protected, was inadmissible as evidence of his consciousness of guilt and its allowance for that purpose

was reversible error. In support thereof, he relies principally on *People v. Kennedy* (1975), 33 Ill. App. 3d 857, 338 N.E.2d 414, wherein the State introduced evidence that defendant, who was accused of making bomb threats by telephone, refused to allow the police to make a recording of his voice, and the prosecutor remarked upon that refusal in closing argument. On appeal, the court noted that at the time of his refusal, defendant was in custody and had been advised of his right to remain silent and was told that anything he said could be used against him, but had not been told that his silence could be similarly used. The court then stated "[i]t is unreasonable to expect that a defendant would be aware of the legal distinction between words testimonial in character, and those not constitutionally protected" unless he was informed of the difference, and that under these circumstances, his refusal to provide a voice sample "cannot be said to have sufficient probative value (if indeed, it has any) to warrant its submission to the jury as evidence from which it could be permitted to infer that defendant's silence *** would tend to establish his guilt." *People v. Kennedy* (1975), 33 Ill. App. 3d 857, 862, 338 N.E.2d 414, 418.

In so ruling, the *Kennedy* court adopted the reasoning of *People v. Ellis* (1966), 65 Cal. 2d 529, 421 P.2d 393, 55 Cal. Rptr. 385, which involved a factual situation nearly identical to the one before us. The California Supreme Court held:

> "[D]efendant's refusal to speak might well have been the direct result of the police warning [of his right to remain silent] and cannot be used against him. *** After having given such a warning, if the police direct a defendant to speak for voice identification and he refuses, they must, as a prerequisite to the use of the defendant's refusal to speak as evidence of consciousness of guilt, advise him that the right to remain silent does not include the right to refuse to participate in such a test." 65 Cal. 2d 529, 539, 421 P.2d 393, 398-99, 55 Cal. Rptr. 385, 390-91.

■ In the light of *Kennedy* and *Ellis*, it appears, and both parties agree, that the singular question to be resolved here is whether defendant was given his *Miranda* warnings prior to being asked to say "Hey you" during the lineup. The State argues that there is no evidence before us which would establish that he was so advised, but defendant directs our attention to a sidebar conference wherein defense counsel argued his objection to the State's examination of the arresting officer concerning whether defendant had been questioned about his involvement in the offense. The following colloquy occurred:

"MR. DECKER [defense counsel]: Your Honor, at this time, I'd made a strenuous objection on that. I was given the police reports and had seen them before \*\*\*. There is no reference that there was any questioning of the defendant \*\*\*. All that police report indicates is the fact that the defendant was placed under arrest, advised of his rights, I'm reading the end of the report \*\*\* advised of his rights and transported \*\*\* for processing. \*\*\*

MR. RILEY [Assistant State's Attorney]: There are no statements of any kind by the defendant, Raymond Warner, to anybody that I'm aware of and my point in going over the area \*\*\* with regard to the questioning was the fact that the officer read him his Miranda Warnings and I may have asked the question inartfully. I should have lead him and said did you read the—read him the Miranda Warnings."

Although the court sustained the objection and would not allow further questioning concerning the *Miranda* warnings, the record does disclose, without denial by the State, that there was a police report stating that defendant had been advised of his rights and that the prosecutor, during the sidebar, made the statement that "the officer read him [defendant] his Miranda Warnings." In view thereof, we conclude that this record sufficiently establishes that defendant was advised of his right to remain silent. Since there is nothing in the record to indicate that the police informed defendant that this right did not include the right to refuse to participate in a voice identification test, we find, under the reasoning of *Kennedy* and *Ellis*, that the testimony of his refusal to say the words should not have been admitted, was improperly commented upon as a tacit admission of guilt, and was so inherently prejudicial as to require us to reverse and remand for a new trial.

Reversed and remanded for a new trial.

LORENZ and WILSON, JJ., concur.