THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN EGHAN, Defendant-Appellant.

Second District   No. 2—02—0692

Opinion filed November 13, 2003.

302

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

Following a jury trial, defendant, John Eghan, was found guilty of unlawful possession of less than 15 grams of a substance containing cocaine (720 ILCS 570/402(c) (West 2000)) and sentenced to 24 months' probation. On appeal, defendant contends that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) he was denied a fair trial as a result of the cumulative prejudicial effect of the admission of testimony that he refused to submit to a drug test, the admis-

sion of testimony that he had prior contacts with the police, and the State's improper statements during closing argument; and (3) he was denied the effective assistance of trial counsel. We reverse and remand for a new trial.

On August 2, 2001, defendant was charged by indictment with the offense of unlawful possession of less than 15 grams of a substance containing cocaine (720 ILCS 570/402(c) (West 2000)). Prior to trial, defendant moved *in limine* to preclude the State from presenting any evidence (1) concerning prior contacts between the police and defendant, and (2) that defendant refused the police's request that he take a drug test to prove that he was not a user of cocaine. The trial court granted the motion *in limine* as it related to defendant's prior contacts with police but denied the motion as it related to defendant's refusal to take a drug test.

At trial, the State called Woodridge police officers Mark Walters, Cornell Owens, and Steve Edson. These officers testified that, on the afternoon of July 10, 2001, they entered the Hawthorne Ridge apartment complex in an unmarked squad car. The officers had previously made several drug arrests in the complex and were patrolling for "suspicious activity and narcotic activity." As the officers were driving, they noticed defendant and a man named Douglas Anderson "moving around" outside a vehicle. The officers observed no other persons in the parking lot.

Walters testified that he called out to defendant, "John, what are you doing?" Defense counsel did not object to this testimony. On cross-examination, Walters testified that he was acquainted with both defendant and Anderson. Owens and Edson also testified, without objection, that they knew defendant's first name and that Walters used defendant's name when he called out to him.

The officers testified that defendant held a beer can and walked to the front of the vehicle that he had been standing near. Defendant then walked past the squad car and continued toward the other side of the parking lot. Walters, who was driving the squad car, accelerated forward and completed a U-turn, so that the officers could maintain their visual contact with defendant. Walters testified that the officers exited the squad car and that he continued to request defendant to "come over by [him] and stop." Defendant did not respond to these requests but, rather, walked across the main driveway of the apartment complex and toward a pickup truck parked on the opposite side of the parking lot.

Walters testified that defendant walked behind the truck as the officers were approaching him on foot. Walters walked toward the front of the truck, and Edson walked toward the rear. Walters testified that,

because of an incline in the parking lot, he could see the bottom of defendant's body "from the knees down" as Walters walked toward the truck. Walters testified that defendant paused behind the truck for three to five seconds and then walked around the driver's side of the truck and approached Walters.

Edson testified that the officers were still seated in the squad car at the time defendant walked behind the truck and paused for six to eight seconds. Edson testified that he could see defendant's feet and ankles under the truck and "[i]t looked like the posture that someone would look like when they are trying to get something out of their pocket." Defense counsel objected to this testimony, and the trial court sustained the objection. Edson then testified, without objection, that he observed defendant "flex" his ankles and transfer his weight to the ball of one of his feet. On cross-examination, Edson acknowledged that he never saw defendant reach into his pocket.

Edson testified that, following defendant's pause behind the truck, he exited the squad car and walked along the passenger side of the truck to the rear of the truck while defendant walked alongside the driver's side of the truck. Edson observed a plastic baggie containing a rock-like substance on the rear bumper of the truck. The parties stipulated that the baggie contained 3.14 grams of cocaine. Edson testified that the baggie "appeared to have a light moisture on the exterior." The officers then arrested defendant. Edson testified that, as he assisted Walters handcuff defendant, he observed that the moisture on the outside of the baggie had evaporated. On cross-examination, Edson admitted that he did not know whether his own hands might have caused the moisture to appear on the baggie. Edson also admitted that the police never attempted to lift fingerprints from the baggie.

After Walters arrested defendant and provided him with his *Miranda* warnings, defendant asked, "What am I being arrested for?" In response to Walters's inquiry whether the drugs were his, defendant stated, "[you] got the wrong guy." Later at the police station, Walters asked defendant whether he would undergo a drug test to determine the presence of cocaine in his bloodstream. Defendant responded that he "had cannabis in his system but not [cocaine]." Walters again proposed that defendant "take a test to kind of prove that [he did not] have cocaine or crack cocaine in his system," and defendant again refused to undergo any testing.

Officers Owens and Walters also spoke with Anderson at the scene. Owens described Anderson as somewhat nervous. Walters testified that he had personal knowledge of Anderson's past involvement in drug activity. Walters testified that, when he asked Anderson about

the cocaine the police had found at the scene, Anderson appeared nervous and his hands were shaking.

During closing argument, the State noted that the officers had given defendant an opportunity to take a drug test to show whether he had cocaine in his system. The State argued, "[T]he defendant refused to do that, refused to cooperate. He knew that those drugs on that bumper were his." The State also argued that defendant made "some sort of movement with his feet that [was] indicative of someone reaching into a pocket and getting something out." Defense counsel did not object to these statements.

The jury found defendant guilty of the charged offense. Following a sentencing hearing, the trial court sentenced defendant to 24 months' probation. This court subsequently allowed defendant's motion to file a late notice of appeal.

Defendant's first contention on appeal is that the State failed to prove him guilty beyond a reasonable doubt. Specifically, defendant argues that the State failed to prove that the baggie of cocaine or the truck bumper where the cocaine was found was in his immediate and exclusive control. Defendant therefore concludes that the State failed to prove that he was in knowing possession of the cocaine and requests outright reversal of his conviction.

■ When considering a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. The determination of the weight to be given to the witnesses' testimony, their credibility, and the reasonable inferences to be drawn from the evidence are the responsibility of the fact finder. *Collins*, 106 Ill. 2d at 261. The standard of review is the same whether the evidence is direct or circumstantial. *People v. Moore*, 171 Ill. 2d 74, 95 (1996).

■ To establish the elements of unlawful possession of a controlled substance, the State must prove that the defendant had knowledge of the presence of the controlled substance and that the defendant had immediate and exclusive possession or control of the controlled substance. *People v. Frieberg*, 147 Ill. 2d 326, 360-61 (1992). The elements of knowledge and possession are questions of fact to be determined by the trier of fact. *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000). The State must prove that the defendant's possession of the controlled substance was actual or constructive. *Frieberg*, 147 Ill. 2d at 361. Actual possession is the exercise by the defendant of present personal dominion over the illicit material and exists when the

defendant exercises immediate and exclusive dominion or control over the illicit material. *Schmalz*, 194 Ill. 2d at 82. Actual possession does not require present personal touching of the illicit material but, rather, present personal dominion over it. *Schmalz*, 194 Ill. 2d at 82. Constructive possession, on the other hand, exists without actual present personal dominion over a controlled substance. *Frieberg*, 147 Ill. 2d at 361. A defendant has constructive possession over a controlled substance when he or she has the intent and capability to maintain control and dominion over the controlled substance. *Frieberg*, 147 Ill. 2d at 361. The elements of the offense of unlawful possession of a controlled substance may be proved by circumstantial evidence. *People v. Chavez*, 327 Ill. App. 3d 18, 24 (2001) (knowledge may be established by evidence of acts, declarations, or conduct of a defendant from which it may be inferred that defendant knew of the existence of contraband).

■ Based upon the evidence appearing in the record, a rational jury could have found that the State proved the elements of the offense beyond a reasonable doubt. Officer Walters testified that defendant did not respond to his inquiries and instead walked away from the officers to the other side of the parking lot. The officers observed defendant walk behind a truck and pause for several seconds. At this time, defendant appeared to "flex" his ankles and shift his weight onto one foot. Defendant then came out from behind the truck, and when Edson walked to the spot where defendant had been standing, he found a baggie of cocaine on the rear bumper. Defendant had the capability to control the baggie as it was within his arm's reach as he walked around the truck. Although the police did not observe defendant personally touching the baggie of cocaine, the circumstantial evidence supported a reasonable inference that defendant possessed the baggie of cocaine on his person at the time of his initial contact with police and then attempted to conceal the cocaine on the truck's bumper before it was discovered by the police. The circumstantial evidence was thus sufficient to support a conclusion that defendant knew of the presence of the drugs and that he had exercised dominion and control over those drugs. See *People v. Adams*, 161 Ill. 2d 333, 344-45 (1994) (evidence that individuals were seen exiting an airline bathroom where contraband was found was sufficient circumstantial evidence to support conviction of unlawful possession of a controlled substance); see also *People v. McLaurin*, 331 Ill. App. 3d 498, 503 (2002) (hiding drugs to avoid detection indicates an intent to exercise control over them).

Defendant relies upon *People v. Ray*, 232 Ill. App. 3d 459 (1992), *People v. Blackman*, 62 Ill. App. 3d 726 (1978), and *People v. Jones*, 105 Ill. App. 3d 1143 (1982), in support of his arguments that he did

not have exclusive control over the truck where the drugs were found and that his mere proximity to the contraband was insufficient to establish constructive possession. In *Ray*, the reviewing court reversed a defendant's conviction of possession of cocaine as a result of the State's failure to show that the defendant owned, rented, or lived in the apartment where the cocaine was found. *Ray*, 232 Ill. App. 3d at 462. In *Blackman*, the reviewing court reversed a defendant's conviction of possession of cannabis as a result of the State's failure to show that the defendant had control over the car in which he was riding at the time the police found the cannabis in the trunk. *Blackman*, 62 Ill. App. 3d at 730-31. In *Jones*, the reviewing court reversed a defendant's conviction of possession of a controlled substance where the defendant did not rent or live in the apartment where the drugs were found. *Jones*, 105 Ill. App. 3d at 1148-49. .

Since *Ray*, *Blackman*, and *Jones* were decided, however, our supreme court has held that proof of a defendant's control over the premises where drugs were located is not a prerequisite to prove the defendant's constructive possession of the contraband. See *People v. Adams*, 161 Ill. 2d 333, 344-45 (1994). In *Adams*, the supreme court explained, "not only does a defendant not need to control the premises, he does not even need to have actual, personal, present dominion over the drugs themselves." *Adams*, 161 Ill. 2d at 345. The State need show only that the defendant has not abandoned the drugs and that no other person has obtained possession of the drugs. *Adams*, 161 Ill. 2d at 345. Therefore, proof that the defendant knew the drugs were present and exercised control over them establishes constructive possession. *People v. Jones*, 295 Ill. App. 3d 444, 453 (1998).

Here, defendant did not respond to the officers' requests to stop and instead walked away from the officers to the other side of the parking lot. The officers observed defendant walk to the precise area where the cocaine was found and observed defendant stand there for several seconds. The baggie's location on the bumper of the truck was within reaching distance of defendant. The officers testified that no other person besides defendant was observed near the area where the cocaine was found. The baggie was also observed to be covered with moisture shortly after defendant walked away from the area. Based upon this evidence, a rational jury could conclude that defendant's connection to the cocaine was more than a "mere proximity" and that defendant knew of the drugs' presence and exercised control over them by placing them on the truck's bumper. See *Jones*, 295 Ill. App. 3d at 453. As such, we hold that the State introduced sufficient evidence to prove defendant's guilt beyond a reasonable doubt.

■ Defendant's second contention on appeal is that he was denied

a fair trial as a result of the cumulative prejudicial effect of the admission of improper evidence and the State's improper closing argument. Specifically, defendant argues that (1) the trial court improperly admitted evidence that he refused to submit to a drug test proposed by the police; (2) the trial court improperly admitted evidence that he had previous contacts with the police; and (3) the State made improper statements during closing argument about defendant's movement behind the truck. The admission of evidence is a matter within the discretion of the trial court. *People v. Watson*, 338 Ill. App. 3d 765, 779 (2003). Additionally, the State is afforded wide latitude in closing argument and improper remarks will not warrant reversal unless they substantially prejudiced the defendant. *People v. Sims*, 285 Ill. App. 3d 598, 605 (1996).

■ The State initially contends that defendant failed to preserve this contention for review as a result of his failure to object to these matters at trial and to raise them in a posttrial motion. Ordinarily, a defendant must object to an error at trial and include the objection in a posttrial motion to preserve it for review. *People v. Mullen*, 141 Ill. 2d 394, 401 (1990). Defendant concedes that he has waived review of these alleged errors but nonetheless requests that we review them as plain error. The plain error rule may be invoked when a defendant has not properly preserved an error for review where the evidence is closely balanced or where the alleged error adversely affected the defendant's right to a fair trial. *Mullen*, 141 Ill. 2d at 401-02. Here, some of the evidence complained of implicates defendant's constitutional right not to be compelled to incriminate himself. Given the nature of the evidence and the possibility that the admission of the evidence could have prevented defendant from receiving a fair trial, we will consider the contention defendant has raised on appeal. See *People v. McGee*, 245 Ill. App. 3d 703, 705 (1993).

■ We first consider whether the trial court abused its discretion in allowing evidence that defendant refused to submit to a drug test proposed by the police. Defendant argues that the admission of this evidence was unduly prejudicial because it permitted the State to elicit evidence that he had exercised his fourth amendment right to be free from unreasonable searches and seizures (U.S. Const., amend IV). Relying on several federal cases, defendant argues that his refusal to submit to a drug test should not have been admitted against him at trial as evidence of consciousness of guilt. See *United States v. Moreno*, 233 F.3d 937 (7th Cir. 2000); *United States v. Thame*, 846 F.2d 200 (3d Cir. 1988). Defendant also argues that the admission of this evidence violated his fifth amendment right not to be compelled to give evidence against himself. U.S. Const., amend. V.

Initially, we note that the admission of evidence of defendant's refusal did not itself constitute a violation of either the fourth or fifth amendment. The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend IV. However, for fourth amendment protections to apply, there must be a seizure. *People v. Halmon*, 225 Ill. App. 3d 259, 268 (1992) (noting that, when no seizure occurs, no fourth amendment rights have been infringed). Here, although the police officers requested defendant to consent to a drug test, defendant refused the request, and no drug test was administered. Therefore, the police obtained no drug test results that could have been admitted into evidence at trial. Lacking a seizure of any evidence, defendant's fourth amendment rights have not been violated. While the admission of evidence of defendant's refusal may have been prejudicial because it permitted the State to comment upon defendant's exercise of his fourth amendment right, an issue that we will consider below, the admission of the evidence itself did not violate the fourth amendment.

Additionally, the admission of defendant's refusal to consent to the drug test was not a violation of defendant's fifth amendment privilege against self-incrimination. The fifth amendment to the United States Constitution guarantees that a criminal defendant shall not "be compelled in any criminal case to be a witness against himself." U.S. Const., amend V. It is well settled that drug tests are not testimonial statements within the scope of fifth amendment protection; rather, they are categorized as noncommunicative "real or physical" evidence of which the defendant is merely the source. *Schmerber v. California*, 384 U.S. 757, 762-65, 16 L. Ed. 2d 908, 915-17, 86 S. Ct. 1826, 1831-33 (1966). Thus, compelling an accused to submit to a drug test does not violate his constitutional privilege against self-incrimination. *Schmerber*, 384 U.S. at 765, 16 L. Ed. 2d at 916-17, 86 S. Ct. at 1832-33. Because the submission to a drug test is not protected by the fifth amendment, the act of refusing to submit is not itself a compelled communication violative of the fifth amendment. See *South Dakota v. Neville*, 459 U.S. 553, 564, 74 L. Ed. 2d 748, 759, 103 S. Ct. 916, 922-23 (1983).

However, that the admission of defendant's refusal to submit to a drug test did not violate either the fourth or fifth amendment does not end our inquiry. As defendant notes, federal and Illinois courts have held that the admission of such evidence is nonetheless unduly prejudicial and deprives a defendant of a fair trial as it permits a jury to infer consciousness of guilt from the defendant's exercise of his rights. For example, several federal circuit courts have held that it is

improper for the State to elicit testimony that a defendant refused to consent to a search unsupported by a warrant or probable cause. See *Moreno*, 233 F.3d at 940-41 (holding that the admission of evidence that the defendant refused to consent to a warrantless search was inconsistent with due process); *Thame*, 846 F.2d at 206-07 (holding that it was error for prosecution to comment upon the defendant's refusal to consent to a warrantless search of a piece of luggage); *United States v. Prescott*, 581 F.2d 1343, 1352 (9th Cir. 1978) (holding that the trial court erred in allowing evidence that the defendant exercised her fourth amendment right to refuse to consent to a warrantless search of her home).

Several Illinois courts have also held that a defendant is denied a fair trial when evidence is admitted revealing that the defendant refused to consent to the procurement of physical evidence from the defendant's person. See *People v. Warner*, 121 Ill. App. 3d 322 (1984); *People v. Kennedy*, 33 Ill. App. 3d 857 (1975). In *Kennedy*, the State introduced evidence that the defendant, who was accused of making bomb threats by telephone, refused to permit the police to make a recording of his voice, and the prosecutor remarked upon that refusal in closing argument. *Kennedy*, 33 Ill. App. 3d at 859-60. On appeal, the reviewing court held that the admission of the evidence deprived the defendant of a fair trial. The court explained:

"Defendant had been arrested, and was in custody when the officers began their interrogation. He had been expressly advised of his right to remain silent and that anything he said could be used against him. There is no suggestion that he was told that his silence, as well as anything that he might say, could be so used. It is unreasonable to expect that a defendant would be aware of the legal distinction between words testimonial in character, and those not constitutionally protected. Defendant's refusal to speak under these circumstances may well have been an exercise of his right to remain silent which the officers had conveyed to him without qualification. It is also true that defendant's silence under these circumstances cannot be said to have sufficient probative value (if indeed, it has any) to warrant its submission to the jury as evidence from which it could be permitted to infer that defendant's silence was indicative that he felt that the voice sample would tend to establish his guilt. ***

The proposition that the officers may advise defendant that he has an unqualified right to remain silent, and to then permit the State to utilize a defendant's silence under the circumstances here present, does not comport with a sense of fundamental fairness."

*Kennedy*, 33 Ill. App. 3d at 862.

Concluding that the prejudicial effect of the evidence outweighed its

probative value, the reviewing court granted the defendant a new trial. *Kennedy*, 33 Ill. App. 3d at 862.

In *Warner*, the State introduced evidence that the defendant refused to comply with a police request to say the phrase "Hey you" during an identification lineup viewed by the victim. *Warner*, 121 Ill. App. 3d at 324. On appeal, the reviewing court noted that the defendant's refusal to provide a sample of his voice was not a constitutionally protected right under the fifth amendment and that the admission of the defendant's refusal did not violate fifth amendment protections. *Warner*, 121 Ill. App. 3d at 325. Nonetheless, relying on *Kennedy*, the reviewing court found that the testimony of the defendant's refusal to give a sample should not have been admitted, was improperly commented upon as a tacit admission of guilt, and "was so inherently prejudicial" as to require a new trial. *Warner*, 121 Ill. App. 3d at 327; see also *People v. Townes*, 130 Ill. App. 3d 844, 858-59 (1985) (holding that trial court erred in permitting the State to introduce evidence that the defendant failed to comply with a police request to submit to the taking of blood and hair samples).

In light of these authorities, we consider whether the admission of defendant's refusal to submit to a drug test in this case was unduly prejudicial and denied defendant a fair trial. The State argues that the probative value of the evidence of defendant's refusal to submit to the drug test was that it had some tendency to indicate a consciousness of guilt. See *People v. Edwards*, 241 Ill. App. 3d 839, 843 (1993) (holding that defendant's refusal to submit to a blood test to provide samples in a case involving a sexual assault was properly admissible as evidence of consciousness of guilt). The only fact that such evidence would have some tendency to support, however, is that defendant had recently ingested drugs. The State was not obligated to prove this fact to secure a conviction on the indictment. Consumption of a controlled substance is not an element of the offense of possession of a controlled substance. See 720 ILCS 570/402(c) (West 2000). Although we recognize that evidence tending to establish that defendant had recently consumed cocaine might have made it more likely that the cocaine found by the police had been possessed by defendant, the probative value of evidence that defendant had refused to submit to a drug test was limited at best. See *Kennedy*, 33 Ill. App. 3d at 862.

Contrasted against the limited probative value of such evidence is the significant prejudicial effect. While the admission of evidence of defendant's refusal did not itself violate defendant's fourth and fifth amendment rights, it nonetheless allowed the State to argue that defendant's attempt to exercise his rights indicated that defendant knew he was guilty of the charged offense. This was improper. Indeed,

during closing argument the State argued that defendant refused to cooperate with the officer's request because he "knew that those drugs on that bumper were his." Such an argument was highly prejudicial and fundamentally unfair. See *Warner*, 121 Ill. App. 3d at 326-27; *Kennedy*, 33 Ill. App. 3d at 862.

The State asserts that this case is distinguishable from *Warner* and *Kennedy* because the decisions in those cases were predicated upon the courts' recognition that the *Miranda* warnings given to the defendants in those cases may have incorrectly made them believe that they were entitled not to give samples of their voices. The State argues that, in this case, defendant was not advised as part of his *Miranda* warnings that he had a right not to take a drug test if there was no probable cause for such a test.

We reject the State's attempts to distinguish *Warner* and *Kennedy*. Defendant here received *Miranda* warnings and was advised, *inter alia*, that he had a right to remain silent, as were the defendants in *Warner* and *Kennedy*. These warnings effectively informed defendant that he did not have to cooperate with the police or provide them with potentially incriminating information. Defendant's refusal to consent to a drug test may well have been a consequence of receiving these warnings. Indeed, the State does not appear to dispute that defendant had a legal basis to refuse to consent to the drug test. We can discern no significant difference between a defendant's refusal to consent to a drug test and a defendant's refusal to give a voice sample. In either case, the admission of evidence of the defendant's refusal is equally prejudicial and fundamentally unfair when the defendant has already received *Miranda* warnings. Accordingly, we conclude that the trial court abused its discretion in permitting the introduction of testimony that defendant refused to consent to a drug test.

■ We also agree with defendant that the trial court abused its discretion when it allowed the State to elicit testimony that the police were acquainted with defendant. As noted above, the trial court granted defendant's motion *in limine* and barred the State from introducing any evidence that the police had previous contacts with defendant. Despite this order, the State nonetheless argued during opening statements and closing arguments that the police could identify defendant and called out to him by name in the parking lot. The State also elicited testimony from the police officers that they called out to defendant by his first name and were familiar with defendant. This argument and evidence violated the trial court's previous *in limine* order and was highly prejudicial. See *People v. Bryant*, 113 Ill. 2d 497, 514 (1986) (holding that it was improper for police to testify that they had called the defendant by his name as the testimony permitted the jury to infer that the defendant had a criminal history).

▮ Defendant was also prejudiced by the State's comments during closing argument that defendant had stood behind the car "mak[ing] some sort of movement with his feet that [was] indicative of someone reaching into a pocket and getting something out." The State made this comment despite the fact that the trial court had previously sustained defendant's objection to Edson's trial testimony that defendant's posture behind the car resembled what "someone would look like when they are trying to get something out of their pocket." The State therefore improperly made explicit reference during closing argument to testimony that the trial court had already ruled inadmissible. Defendant was prejudiced by the remark, which encouraged the jury to speculate on defendant's conduct based on inadmissible evidence. See *People v. Mullen*, 141 Ill. 2d 394, 405 (1990) (holding that it was reversible error for State to comment during closing argument on matters the trial court had ruled were inadmissible during trial).

▮ We agree with defendant that the cumulative effect of all of these errors was to deny him a fair trial. See *Kennedy*, 33 Ill. App. 3d at 862. Therefore, we hold that justice and fundamental fairness require that defendant's conviction and sentence be reversed and the case remanded for a new trial without the improper evidence and argument. As noted above, we have found that the State's evidence was sufficient to prove defendant guilty of the charged offense beyond a reasonable doubt. Therefore, defendant will not be subjected to double jeopardy by a subsequent retrial. See *People v. Taylor*, 76 Ill. 2d 289, 309 (1979). In light of our holding, we need not address defendant's final contention that he was denied the effective assistance of counsel.

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County and remand the case for a new trial consistent with the views expressed herein.

Reversed and remanded.

GROMETER and KAPALA, JJ., concur.