# Illinois Official Reports

## Appellate Court

---

### *People v. Pittman*, 2014 IL App (1st) 123499

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES PITTMAN, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-3499 |
| Filed | December 23, 2014 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-4873; the Hon. Thaddeus L. Wilson, Judge, presiding. |
| Judgment | Affirmed; fines and fees order corrected. |
| Counsel on Appeal | Michael J. Pelletier and Heidi Linn Lambros, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Anthony O'Brien and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Lavin and Mason concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant Charles Pittman was convicted of two counts of possession of a controlled substance with intent to deliver and sentenced to two concurrent terms of 11 years in prison. On appeal, Pittman contends that (i) the State failed to prove his intent to deliver beyond a reasonable doubt, (ii) his sentence is excessive, and (iii) his two convictions violate the one-act, one-crime principles set forth in *People v. King*, 66 Ill. 2d 551, 566 (1977). Pittman also contends that his fines, fees, and costs order should be corrected.

¶ 2    We find that the State sufficiently proved Pittman's intent to deliver through evidence of the quantity of the drug recovered, its packaging, and officers' description of an attempted drug transaction. We also find Pittman's sentence appropriate as it fell within the statutory range and the record shows the trial court considered all mitigating and aggravating factors. We conclude that Pittman's two convictions for possession of a controlled substance with intent to deliver do not violate *King* because his actual possession of the first set of drugs and his constructive possession of the second set constitute two separate acts. We affirm and correct the fines and fees order.

¶ 3                                    BACKGROUND

¶ 4    The charges against Pittman arose from an encounter between Pittman and three Chicago police officers near a vacant building and lot on February 15, 2012. During a brief chase, officers observed Pittman throw packets holding 1.8 grams of heroin into a nearby garbage can. Following Pittman's arrest he led the officers to a hidden container in a neighboring lot containing an additional 3.1 grams of heroin.

¶ 5    At trial, Officer Robert Vahl testified that while on patrol with Chicago police officers Barsch and Kakos, in the 5600 block of South Marshfield Avenue, Chicago, around 1 p.m. on February 15, 2012, Vahl saw three or four middle-aged men standing in a line in front of 5618 South Marshfield. Based on his 13 years of experience, he believed a narcotics transaction was in the offing. Pittman approached the men from a neighboring vacant lot. Once Pittman met the group, one of the individuals handed Pittman cash. After receiving the money, Pittman looked down the street toward the police officers and fled through the vacant lot. Vahl chased Pittman with Officer Kakos following directly behind. On reaching the alley behind the lot, Pittman threw a plastic bag containing small, blue items into an open garbage can. Vahl caught Pittman and secured him five feet from the can.

¶ 6    Following the chase, Vahl returned to the garbage can and found eight small, blue-tinted Ziploc bags containing what he believed to be heroin. The eight packets were taped together in a line 8 to 10 inches long. Vahl testified that the packaging and amount were consistent with an active participation in the sale of narcotics. He also testified that heroin buyers usually possess one to two bags of heroin.

¶ 7    After advising Pittman of his *Miranda* rights, Vahl asked if any more narcotics were in the area. Pittman offered to direct the officers to more narcotics in exchange for his release.

Pittman directed the officers to a boat in the adjacent vacant lot. After placing Pittman in the police car, Vahl and Kakos searched the boat. Finding nothing, the officers returned to Pittman, who then directed them to the boat's wheel well. Kakos found a Tic Tac container taped to a magnet hidden in the boat's wheel well. Inside the container were 13 blue bags identical to the 8 bags recovered from the garbage can. Vahl did not find any money on Pittman or in the area and did not see Pittman throw or drop any currency.

¶ 8 The State then called Officer Kakos, who testified consistently with Officer Vahl.

¶ 9 The parties stipulated that the first 8 bags contained 1.8 grams of heroin and the 13 bags from the Tic Tac container contained 3.1 grams of heroin. After the State rested, the trial court denied Pittman's motion for a directed finding. Pittman presented no witnesses and did not testify.

¶ 10 The trial court found Pittman guilty of both counts of possession of a controlled substance with the intent to deliver. At Pittman's sentencing hearing, the State observed that Pittman had 10 prior convictions and thus was subject to a Class X sentence. Pittman in mitigation argued that he had a 20-year history of drug abuse, that he used 10 bags of heroin and cocaine a day, and that the crimes committed were not egregious. Pittman spoke on his own behalf, stating he was an addict and was "sick and tired." The trial court sentenced Pittman to two concurrent terms of 11 years' imprisonment and fines, fees and costs totaling $2,950. Pittman filed a motion to reconsider the sentence, which the trial court denied.

¶ 11          ANALYSIS

¶ 12     Sufficiency of the Evidence of Intent to Deliver

¶ 13 Pittman first contends that the State failed to prove beyond a reasonable doubt that Pittman possessed a controlled substance with intent to deliver. Particularly, Pittman asks that his convictions be reduced to simple possession because there was insufficient evidence of intent to deliver.

¶ 14 Due process requires the State to prove each element of a conviction beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). When reviewing the sufficiency of evidence, a reviewing court must decide "whether, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Cunningham*, 212 Ill. 2d at 278.

¶ 15 In Illinois, possession of a controlled substance with intent to deliver requires the State to prove: (1) defendant had knowledge of the presence of a controlled substance; (2) the substance was in defendant's immediate possession or control; and (3) defendant intended to deliver narcotics. 720 ILCS 570/401 (West 2010); *People v. Robinson*, 167 Ill. 2d 397, 407 (1995). The first two elements are not disputed in this appeal.

¶ 16 Given the rarity of direct evidence of intent, it must typically be proven through circumstantial evidence. *Robinson*, 167 Ill. 2d at 408. The Illinois Supreme Court has set forth seven factors probative of intent to deliver: (1) possession of a quantity too large to be for personal consumption; (2) purity of the drug; (3) possession of weapons; (4) possession of large amounts of cash; (5) possession of police scanners, beepers, or cellular phones; (6)

possession of drug paraphernalia; and (7) packaging. *Id*. Which factors will be considered depends on the facts of the case. See *id.*; *People v. Bush*, 214 Ill. 2d 318, 327 (2005).

¶ 17    The State presented sufficient evidence for a rational fact finder to conclude beyond a reasonable doubt that Pittman intended to deliver a controlled substance. Pittman was in actual or constructive possession of a total of 4.9 grams of heroin. The heroin was in 21 separate packages, with 8 of those packages taped together in a line. Officer Vahl testified that the amount and the packaging were associated with the sale of narcotics, that purchasers usually possessed only one or two bags of narcotics, and that the men standing together on the sidewalk appeared, given his experience, to be about to engage in a drug transaction due to the way they lined up and their proximity to both a vacant building and a vacant lot. Pittman left the vacant lot where the second set of drugs was found to approach the individuals. Finally, both officers testified that they witnessed one of the individuals give money to Pittman on his arrival. Taking the evidence together, one could infer that the officers witnessed the initiation of an attempted drug sale. Thus a rational fact finder could find beyond a reasonable doubt that Pittman intended the controlled substance for delivery.

¶ 18    Pittman cites numerous cases where other defendants convicted of possession with intent to deliver had their convictions reversed due to insufficient evidence of intent. The amounts of controlled substances vary in these cases from much less than the quantity in Pittman's case to much more. Most of these cases, however, are distinguishable because they lacked testimony or other evidence that the amount of the substance was inconsistent with personal use. See *People v. Ellison*, 2013 IL App (1st) 101261, ¶ 15 ("[T]here was no testimony that the amount of drugs recovered–3.112 grams of cocaine and approximately 0.4 grams of heroin–was inconsistent with personal use ***."); *People v. Sherrod*, 394 Ill. App. 3d 863, 866 (2009) (combined weight of three packets, 0.6 gram, could reasonably be viewed as acquired for personal use only); *People v. Thomas*, 261 Ill. App. 3d 366, 371 (1994) (small amount of narcotics, standing alone, does not give rise to inference of intent to deliver); *People v. McLemore*, 203 Ill. App. 3d 1052, 1056 (1990) (same). The only evidence as to whether the amount of heroin in Pittman's possession was or was not consistent with personal use came from Officer Vahl, who testified the amount was consistent with the sale and not personal use of heroin.

¶ 19    Pittman now argues that he has been an addict for 20 years and consumed five bags of heroin a day. He presents health statistics and anecdotal references to prove that the 4.9 grams of heroin recovered were consistent with personal use. But, none of this information was presented to the fact finder at trial and therefore cannot be considered for the first time on review. *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004) ("[A] reviewing court must decide whether, in light of the record, a fact finder could reasonably accept the testimony as true beyond a reasonable doubt. In conducting this inquiry, the reviewing court must not retry the defendant.").

¶ 20    Pittman also argues that the prosecution failed to address factors listed by the *Robinson* court, including the absence of evidence as to the purity of the drugs recovered, that no money was found, and that there was no evidence of a weapon, a police scanner or other paraphernalia. Yet the *Robinson* factors do not constitute a "hard and fast rule to be applied in every case." (Internal quotation marks omitted.) *People v. Bush*, 214 Ill. 2d 318, 325 (2005). The other circumstantial evidence presented to the trial court presents ample evidence of defendant's intent. Taking the evidence as a whole, in the light most favorable to the State, we

do not find the evidence "so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins*, 214 Ill. 2d 206, 217 (2005).

¶ 21                                                                Sentence

¶ 22      Pittman next contends that he received an excessive sentence given the mitigating factors presented at the sentencing hearing. Pittman was 53 at the time of his conviction and suffered from a 20-year addiction to heroin and cocaine. At his sentencing, Pittman expressed remorse, stating "I'm sick and I'm tired." Pittman further argues that his crime resulted in no harmful consequences.

¶ 23      The State first argues that Pittman forfeited this issue by failing to object during the sentencing hearing and by failing to include the issue in a motion for a new sentence. As we find that the trial court did not err, we need not discuss whether the issue was properly preserved. See *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (first step in plain error analysis involves determining occurrence of error). Alternatively, the State argues that the record indicates that the trial court considered all proper aggravating and mitigating factors before imposing a sentence and that, given Pittman's criminal background, he received a proper sentence.

¶ 24      All sentences must reflect the seriousness of the offense committed and the objective of rehabilitating offenders to useful citizenship. *People v. Cooper*, 283 Ill. App. 3d 86, 95 (1996). The trial court must consider all factors in mitigation and aggravation. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). The sentencing court need not record or articulate its exact weighing and balancing of those factors. *Id.*

¶ 25      A reviewing court may only reduce a sentence when the record shows that the trial court abused its discretion. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). When examining sentences imposed by lower courts, reviewing courts "should proceed with great caution and care." *Id.* The reviewing court may not reverse the sentencing court just because it could have weighed the factors differently. *Id.*

¶ 26      Pittman, based on his criminal history, faced a minimum sentence of 6 years and a maximum sentence of 30 years. 730 ILCS 5/5-4.5-95(b) (West 2010). A sentencing decision within the statutory range receives great deference. *People v. Hill*, 408 Ill. App. 3d 23, 29 (2011).

¶ 27      While Pittman notes that his 11-year sentence is almost double the minimum sentence, it is also less than half of the maximum sentence. In sentencing Pittman, the trial court explicitly stated that it considered the gravity of the offense, the presentence investigation report, the substance abuse issues of Pittman, and Pittman's statement. Thus the trial court did not refuse or fail to consider the mitigating factors, but simply weighed them differently than Pittman. We find that the trial court did not abuse its discretion in sentencing Pittman to 11 years.

¶ 28                                                         One Act, One Crime

¶ 29      Pittman also argues that his convictions for two counts of possession of a controlled substance with intent to deliver violate one-act, one-crime principles because both counts are based on the same act of possession. Pittman notes that before being arrested, he ran through the vacant lot and tossed the first set of baggies into a garbage can. Immediately after that, he directed the officers to the second quantity of heroin located in the wheel well of the boat in the

vacant lot. The drugs were packaged identically and the entire encounter took mere minutes. Pittman also notes that the indictments for each count were identical.

¶ 30     The State argues that Pittman's convictions stem from two distinctive acts: Pittman (1) threw the first set of packets into a garbage can behind 5618 South Marshfield and (2) informed the police of the second set of packets in the boat at 5616 South Marshfield. Police recovered drugs from two different locations at two different times.

¶ 31     Pittman acknowledges that the issue was not raised at the trial court level, so plain error analysis applies. A reviewing court may consider an error, despite forfeiture, when a clear and obvious error occurred and either (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against defendant or (2) the error is so serious as to challenge the integrity of the judicial process. *Piatkowski*, 225 Ill. 2d at 565. The Illinois Supreme Court has ruled that a violation of one-act, one-crime principles challenges the integrity of the judicial process and therefore passes the second prong of plain error analysis. *In re Samantha V.*, 234 Ill. 2d 359, 378 (2009). The question then is whether error exists.

¶ 32     Under one-act, one-crime principles, a defendant cannot be convicted of multiple offenses "carved from the same physical act." *People v. King*, 66 Ill. 2d 551, 566 (1977). When offenses stem from multiple related acts, multiple convictions with concurrent sentences are permitted so long as the offenses are not lesser included offenses. *Id.* An act is "any overt or outward manifestation which will support a different offense." *Id.* One-act, one-crime challenges are subject to *de novo* review. *People v. Artis*, 232 Ill. 2d 156, 161 (2009).

¶ 33     In *People v. Manning*, the Illinois Supreme Court held that the simultaneous possession of different types of controlled substances would not support multiple convictions and sentences without an express statutory provision. *People v. Manning*, 71 Ill. 2d 132, 137 (1978). While *Manning* was overruled by legislative amendment, the Illinois Supreme Court has held that its reasoning remains valid. See *People v. Carter*, 213 Ill. 2d 295, 303 (2004) ("The amendment, however, does not change the underlying holding of *Manning*."). The legislative amendments to the Illinois Controlled Substances Act provide the express statutory provision required by *Manning* as to separate controlled substances, yet there is no such provision for simultaneous possession of the same substance. See 720 ILCS 570/401 (West 2010); see also 720 ILCS 570/100 (West 2010). Accordingly, we must determine whether the possession of the 8 packets of heroin on Pittman's person and the possession of the 13 packets recovered from the boat were simultaneous within the meaning of *Manning* so as to constitute one act under *King*.

¶ 34     Both Pittman and the State focus on the location and timing of the two quantities of drugs in their arguments. Pittman cites the proximity in time and location between the two sets. The State distinguishes between when Pittman threw the first set of packets and when he directed the police to the second set of packets. We believe the proper analysis is not about the method of recovery, but rather the act of possession itself. Pittman was not charged with throwing a controlled substance or directing officers to a controlled substance; he was charged with two counts of possession. Therefore we must focus our analysis on whether the acts of *possession* constitute distinct acts under *King*.

¶ 35     The analysis under *King* cannot be simplified down to a question of location or time. The Illinois Supreme Court has repeatedly declined to adopt appellate court developed tests based on factors including location and time. See *People v. Crespo*, 203 Ill. 2d 335, 342 (2001); see also *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996). In *Crespo*, the defendant stabbed his step-daughter three times "in rapid succession." *Crespo*, 203 Ill. 2d at 338. Despite the

closeness in time of each act, the *Crespo* court held that the three separate stabs were each separate acts under *King*; however, they could only support separate convictions where the State had apportioned each stab to separate charges in the indictment or its argument to the jury. *Id.* at 342. The Illinois Supreme Court has stressed that *King*'s definition of act remains the focus of any one-act, one-crime inquiry. *Rodriguez*, 169 Ill. 2d at 188. A single act is "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977); see also *Crespo*, 203 Ill. 2d at 342. So we must look to the overt acts underlying Pittman's convictions. We believe that in possession cases the essential question is whether distinctive evidence is used to prove each possession and the State has apportioned the offenses charged among each possession.

¶ 36    Possession of a controlled substance can be proven in two distinct ways. See *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992); *People v. Eghan*, 344 Ill. App. 3d 301, 306 (2003). Actual possession is accomplished through "the exercise by the defendant of present personal dominion over the illicit material." *Eghan*, 344 Ill. App. 3d at 306. The act of actual possession requires the exercise of "immediate and exclusive *** control" over the controlled substance. *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000). Conversely, constructive possession requires "the intent and capability to maintain control and dominion over the controlled substance" without immediate, actual control. *Eghan*, 344 Ill. App. 3d at 307. Therefore, one cannot both actually and constructively possess an item at the same instant, as constructive possession is defined by "a lack of actual present personal dominion." *Id.* In *King*, the Illinois Supreme Court distinguished the defendant's rape and burglary convictions by noting that each act required proof of a separate element as to the act required. *King*, 66 Ill. 2d at 566. Similarly, the acts of actual possession and constructive possession are proven with different evidentiary support. Where actual possession requires proof of control, constructive possession requires proof of intent and capability to control.

¶ 37    We find that the State proved each count through distinct evidence. Pittman actually possessed the first set of packets. The drugs were on his person and fully within his control, evidenced by the fact that he was able to throw the packets. He constructively possessed the second set of packets. They were not in his immediate, personal control. Instead, Pittman's careful hiding of the drugs circumstantially evidenced his intent and capability to return later and only then exercise actual control. Therefore, Pittman committed two separate acts of possession: (1) the exercise of present, personal control over the first set of drugs and (2) the exercise of constructive control through the intent and capability to return to the second set of drugs. Furthermore, Pittman's indictment charged two separate counts of possession of a controlled substance with intent to deliver and, therefore, indicated "that the State intended to treat the conduct of defendant as multiple acts." *Crespo*, 203 Ill. 2d at 345.

¶ 38    It his reply brief, Pittman raises a new argument–if we agree that Pittman's drug possession constitutes distinct and separate acts, then the State should have had to prove intent to distribute as to each independently, and the State only proved intent to distribute the bags of heroin in Pittman's actual possession. Arguments raised for the first time in a reply brief need not be addressed by this court. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued [in the opening brief] are waived and shall not be raised in the reply brief ***."). Besides maintaining consistency and uniformity, avoiding confusion, and preventing gamesmanship, Rule 341(h)(7) prevents unfairness to an adverse party who would have no notice of the issue

or an opportunity to provide a response. Because this issue could have been raised in the principle brief but was not, we decline to entertain it.

¶ 39    We find the actual possession and the constructive possession to be two separate acts and Pittman has failed to show that any error exists.

¶ 40                    Presentence Incarceration Credit

¶ 41    Finally, Pittman argues, and the State concedes, that he is entitled to a presentence incarceration credit of $1,305 toward his fines of $2,080. Pittman also has costs and fees totaling $515, for a total amount owed of $2,595. Defendants assessed a fine earn a $5 credit for each day spent in custody on a bailable offense. 725 ILCS 5/110-14 (West 2010). The credit applies only to "fines" imposed for a conviction, not to other fees or costs. *People v. White*, 333 Ill. App. 3d 777, 781 (2002). We accept the State's concession and order the clerk of the circuit court correct defendant's fines, fees, and costs order to reflect a total due of $1,290.

¶ 42                              CONCLUSION

¶ 43    We conclude that the State presented sufficient evidence to prove Pittman guilty beyond a reasonable doubt of possession of a controlled substance with the intent to deliver. The sentencing court did not abuse its discretion in sentencing Pittman to 11 years' imprisonment. We also conclude that Pittman's actual possession of 8 packets of heroin thrown from his person and his constructive possession of 13 packets recovered from a vacant lot constitute separate acts and his two convictions do not violate one-act, one-crime principles. Therefore, the judgment of the circuit court of Cook County is affirmed, and we order the clerk of the circuit court to correct Pittman's order of fines, fees, and costs to reflect a total due of $1,290.

¶ 44    Affirmed; fines and fees order corrected.