2019 IL App (1st) 163250

FIRST DIVISION
April 29, 2019

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-16-3250

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 19679 |
| | ) | |
| SHERRELL COGER, | ) | Honorable |
| | ) | Mauricio Araujo, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Griffin and Walker concurred in the judgment.

**OPINION**

¶ 1     Sherrell Coger was found guilty in a bench trial of one count of delivery of a substance containing heroin and one count of delivery of a substance containing cocaine (720 ILCS 570/401(d)(i) (West 2014)). We reject Ms. Coger's claim that the State failed to adequately show a chain of custody for the narcotics. But we agree with Ms. Coger that because the cocaine and heroin were blended into a single substance and the State presented no evidence that she had any idea that the substance contained both illegal drugs, her two convictions violate the one-act, one-crime rule.

¶ 2                         I. BACKGROUND

¶ 3     Ms. Coger was charged by indictment with, in relevant part, two counts of delivery of a

controlled substance based on her delivery of less than one gram of heroin (count III) and less than one gram of cocaine (count IV). Because Ms. Coger does not challenge the overall sufficiency of the evidence, we recite only those facts necessary to our disposition.

¶ 4    Chicago police officer Marshall Mason testified that, on November 15, 2015, at approximately 10:52 a.m., he was working as an undercover buy officer with a team of officers conducting a narcotics investigation. Officer Mason observed a woman in the area of the 2800 block of West Polk Street, later identified as Ms. Coger. Ms. Coger was wearing a black and teal jacket, black pants, and a black baseball hat. Officer Mason approached Ms. Coger and asked "if the blows were outside today." Officer Mason understood "blows" as a street term for heroin. Ms. Coger asked how many Officer Mason wanted and he asked for three. Ms. Coger walked away and after several minutes, she returned and instructed Officer Mason to walk to a nearby vacant lot. They walked to the lot together, and Ms. Coger gave Officer Mason three foil packets in exchange for $30 in prerecorded police funds. Officer Mason then gave his team a nonverbal indication that a positive narcotics transaction had occurred and returned to his undercover vehicle. Ms. Coger was arrested approximately two hours later and identified by Officer Mason as the person who sold him narcotics.

¶ 5    Officer Mason testified that he placed the narcotics he received from Ms. Coger into an evidence bag he kept in his vehicle and kept the narcotics in his constant care, custody, and control until he reached the police station. At the station, Officer Mason inventoried the narcotics pursuant to Chicago Police Department procedures by filling out the information on the bag and entering the information in "I-CLEAR" (Illinois Citizen and Law Enforcement Analysis and Reporting System), which provided a unique inventory number (13467860) for the evidence. He placed the inventory number on the bag, signed two places on the bag, and gave it to his sergeant

to sign. The bag was then heat-sealed and placed in a vault.

¶ 6    Officer Mason identified State's Exhibit 1 as the bag into which he placed the narcotics he received from Ms. Coger. He testified that the narcotics were in the same or substantially same condition as when he placed them in the bag. The only difference he noted was "[j]ust whatever the State people did," which was to "place[ ] them inside plastic bags and put some type of numbers" on them.

¶ 7    On cross-examination, Officer Mason testified he did not weigh the narcotics prior to placing them in the inventory bag. He acknowledged that when the weight of narcotics is documented in police reports, it is an approximation based on previous transactions and a scale used by the police department. Officer Mason explained that, prior to inventorying narcotics, police obtain an estimated weight of the inventory. Officer Mason kept the narcotics in the three separate foil packets when he inventoried them.

¶ 8    Forensic scientist Hasnain Hamayat testified he worked for the Illinois State Police forensic sciences command. Mr. Hamayat was qualified as an expert in the field of forensic chemistry and identified State's Exhibit 1 as the evidence bag he received in this case. He could identify the bag because it bore his "initials inside and outside and the date." The bag was in the same or substantially the same condition as when he last saw it. After Mr. Hamayat received the sealed bag at the drug chemistry vault, the "first thing" he did was "check the content of the bag versus the inventory sheet it came with."

¶ 9    Mr. Hamayat testified that he weighed the three packages together and then subtracted the package weight from the total weight to determine the weight of the substances. The combined weight of the three items, without the packaging, was 0.949 of a gram. Following a preliminary test and a confirmation test, Mr. Hamayat determined within a reasonable degree of

scientific certainty that each of the three items tested positive for the presence of both cocaine and heroin. He did not testify to the amount of heroin or cocaine in any of the packages.

¶ 10    The State rested and Ms. Coger did not present any evidence.

¶ 11    During closing arguments, defense counsel argued that there were "issues with the chemist," arguing that it was "questionable" that the items tested positive for both heroin and cocaine and taking issue with the fact that it was not known how much of either substance was present. Counsel contended that the State failed to prove "both substances" beyond a reasonable doubt.

¶ 12    The court found Ms. Coger guilty of both delivery of heroin and delivery of cocaine. Ms. Coger filed a motion for a new trial, arguing in part that "the Court erred in finding that testimony from Forensic Scientist Hasnain Hamayat was sufficient to prove beyond a reasonable doubt that the items recovered tested positive for both heroin and cocaine." The court denied Ms. Coger's motion and sentenced her, as a Class X offender based on her background, to six years' imprisonment for "delivery of heroin or an analog thereof." Ms. Coger was also convicted of "delivery of cocaine or an analog thereof," but no additional sentence was imposed on that count.

¶ 13                                    II. JURISDICTION

¶ 14    Ms. Coger was sentenced on October 19, 2016, and timely filed her notice of appeal on November 16, 2016. This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Dec. 11, 2014), governing appeals from final judgments of conviction in criminal cases.

¶ 15                                    III. ANALYSIS

¶ 16                                    A. Chain of Custody

¶ 17    On appeal, Ms. Coger first contends that the court erred by admitting the narcotics into evidence because the State failed to lay a proper foundation for that evidence. Specifically, Ms. Coger argues that the State did not present a sufficiently complete chain of custody establishing that the items Ms. Coger delivered to Officer Mason were the same items tested by Mr. Hamayat.

¶ 18    Ms. Coger acknowledges that she failed to preserve this issue because she did not object to the chain of custody at trial but requests that we review it under the plain error doctrine. See *People v. McCarter*, 385 Ill. App. 3d 919, 927 (2008) (generally, to preserve an error for appeal, a defendant must both object at trial and raise the issue in a posttrial motion). Chain of custody establishes a foundation for evidence as reliable and admissible. *People v. Alsup*, 241 Ill. 2d 266, 275 (2011). A claim that the State presented an incomplete chain of custody is a challenge to the foundation of the evidence and is therefore subject to forfeiture. *People v. Banks*, 2016 IL App (1st) 131009, ¶ 68 (citing *People v. Woods*, 214 Ill. 2d 455, 471 (2005)). Application of forfeiture when a defendant did not object to the chain of custody is particularly appropriate because this failure to object deprives the State of its opportunity to cure any deficiency in the foundation. *Id.* ¶ 71 (citing *Woods*, 214 Ill. 2d at 470).

¶ 19    That said, in *Woods*, our supreme court explained that a defendant may raise a forfeited chain of custody issue for the first time on appeal if the alleged error rises to the level of plain error, such as "in those rare instances" where there is "a complete breakdown in the chain of custody," *i.e.*, there was *no* link between the substance recovered by the police and the substance tested. *Woods*, 214 Ill. 2d at 471-72. Here, we find no error, let alone a complete breakdown of

the chain of custody.

¶ 20    Prior to introducing an object into evidence, the State "must lay an adequate foundation either through its identification by witnesses or through a chain of possession." (Internal quotation marks omitted.) *Id.* at 466. The character of the object sought to be introduced into evidence determines the appropriate method of establishing a foundation. *Id.* When an item has readily identifiable and unique characteristics and its composition is not easily changed, the State may lay an adequate foundation through testimony that the item sought to be admitted is the same as the item recovered and is in substantially the same condition as when it was recovered. *Id.* In cases involving controlled substances, by contrast, often the physical evidence is "not readily identifiable or may be susceptible to tampering, contamination or exchange." *Id.* at 466-67. The State, therefore, has the burden of establishing a chain of custody as the foundation for the admission of such evidence. *Id.* at 467. This requires the State to show that the police took reasonable protective measures to ensure the substance recovered from the defendant was the same substance tested by the forensic chemist and the custody chain was sufficiently complete to make it improbable that the evidence was subject to tampering, contamination, or substitution. *Id.* Once the State has established its *prima facie* case, the burden then shifts to the defendant to show actual evidence of tampering, alteration, or substitution. *Id.* at 468.

¶ 21    Without such evidence from the defendant, it is not required that "every person in the chain testify, nor must the State exclude every possibility of tampering or contamination." *Alsup*, 241 Ill. 2d at 275. Moreover, even when there is a missing link in the chain, the evidence is properly admitted "if there was testimony which sufficiently described the condition of the evidence when delivered which matched the description of the evidence when examined." *Id.* Once the State establishes a *prima facie* case, and unless the defendant demonstrates actual

evidence of tampering, deficiencies in the chain of custody go to the weight of the evidence and not to its admissibility. *Id.* at 274-75.

¶ 22 Here, the State laid a sufficient foundation for the narcotics evidence. Both Officer Mason and Mr. Hamayat identified the evidence bag and each established the bag was sealed when either leaving or entering their respective care. Specifically, Officer Mason testified that after receiving the suspected narcotics from Ms. Coger, he placed the foil packets in an evidence bag in his vehicle and kept the items in his care, custody, and control until he reached the police station. Once at the station, he inventoried the items pursuant to Chicago Police Department procedures, which he outlined in detail. Such procedures included filling out the information on the bag and entering the information in "I-CLEAR," which provided a unique inventory number (13467860) for the evidence. He placed the inventory number on the bag, signed two places on the bag, and gave it to his sergeant to sign. The bag was then heat-sealed and placed in a vault. Officer Mason identified the evidence bag containing the items at trial and stated it was in substantially the same condition, except that the Illinois State Police lab placed the narcotics inside plastic bags and numbered them.

¶ 23 Mr. Hamayat identified the evidence bag and noted that it was in the same or substantially the same condition as the last time he saw it. He further noted the bag bore his initials and date both inside and outside. He explained that he received the sealed bag from the "drug chemistry vault" and the "first thing" he did was to "check the content of the bag versus the inventory sheet it came with." This supports a reasonable inference that the contents of the bag and the substances logged on the inventory sheet matched and were therefore the same items. Moreover, Mr. Hamayat's testimony established that the substances he tested were the same as those Officer Mason received from Ms. Coger. Mr. Hamayat repeatedly described the

contents of the inventory as three distinct packets, which corresponded with Officer Mason's testimony regarding the number of packets he received from Ms. Coger during the transaction. See, *e.g.*, *People v. Blankenship*, 406 Ill. App. 3d 578, 588-89 (2010) (finding a "unique identifier," such as use of a police inventory number with matching descriptions of the evidence recovered and the substance tested by a forensic chemist, is sufficient to establish a chain of custody).

¶ 24    Although Mr. Hamayat did not recite the specific inventory number in his testimony, the absence of testimony on the inventory number in this case is not the same as the mismatched inventory numbers that concerned the court in *Woods*. Mr. Hamayat and Officer Mason both identified the same evidence bag, State's Exhibit 1, based on their own signatures on the bag. Thus, even without any testimony about the specific inventory number, the State presented evidence of a sufficiently complete chain of custody from the transaction between Ms. Coger and Officer Mason through Mr. Hamayat's testing.

¶ 25    Additionally, we reject Ms. Coger's claim that the chain of custody evidence was suspect because Officer Mason's testimony regarding the weight of the substances was "almost 40 percent" less than the weight testified to by Mr. Hamayat. In her brief, Ms. Coger argues that Officer Mason testified the substances weighed 0.6 of a gram, while Mr. Hamayat testified they weighed 0.949 of a gram. This is simply not accurate. Officer Mason never testified to the weight of the substances. Rather, on cross-examination, Officer Mason, without giving a specific weight of the items in this case, testified that the police department documents an approximate weight of recovered substances prior to inventorying them. The 0.6-gram approximation that Ms. Coger references was obtained from a police report, which was not even presented as evidence at trial and which was not purported by anyone to be an accurate weight of the substances

recovered.

¶ 26    In short, this is simply not one of the "rare instances" described in *Woods* in which there was a "complete breakdown" in the chain of custody that would permit Ms. Coger to overcome her forfeiture of this issue. In fact, the evidence of a chain of custody was sufficient to establish a foundation for the narcotics evidence entered into evidence at Ms. Coger's trial.

¶ 27                              B. One-Act, One-Crime

¶ 28    Ms. Coger also argues that her convictions for both delivery of heroin and delivery of cocaine violate the one-act, one-crime rule, which prohibits multiple convictions arising out of the same physical act. See *People v. Almond*, 2015 IL 113817, ¶ 47; *People v. King*, 66 Ill. 2d 551, 566 (1977). Ms. Coger again concedes that she failed to preserve this issue by objecting to it at trial or including it in a timely filed posttrial motion. The State makes no forfeiture objection to this argument, recognizing that we may review alleged one-act, one-crime violations under the second prong of the plain error doctrine, as such violations affect the integrity of the judicial process and can result in a surplus sentence. *People v. Nunez*, 236 Ill. 2d 488, 493 (2010); *People v. Price*, 2011 IL App (4th) 100311, ¶ 25. A violation of the one-act, one-crime rule presents a question of law that we review *de novo*. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010).

¶ 29    To support her argument, Ms. Coger begins with *People v. Manning*, 71 Ill. 2d 132 (1978), in which our supreme court held that, absent a statutory provision indicating otherwise, the simultaneous possession of multiple types of controlled substances constitutes a single act supporting only one conviction. *Id.* at 137. In *Manning*, the defendant was "found to be in possession of an assortment of pharmaceutical pills and capsules, later determined to include 343.8 grams of amphetamines and 240.3 grams of barbiturates." *Id.* at 133. Thus, although the controlled substances were in separate pills, because they were all found together, our supreme

court held that they all represented one act of "possession." *Id.* at 135. The court found the situation analogous to charging a thief with 4 different larcenies when he stole 4 horses at the same time and from the same place or 12 larcenies when he stole 12 articles of clothing at once from the same store. *Id.*

¶ 30    However, *Manning* was subsequently superseded by an amendment to the Illinois Controlled Substances Act (Act), which now authorizes multiple convictions for the simultaneous possession or sale of different controlled substances. See Pub. Act 90-593, § 25 (eff. June 19, 1998) (amending 720 ILCS 570/401, 402). The Act now includes the following language: "A violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act." 720 ILCS 570/401, 402 (West 2014). In *People v. Bui*, 381 Ill. App. 3d 397, 427 (2008), we explained that this amendment superseded *Manning* by "expressly authoriz[ing] multiple convictions where a defendant simultaneously possesses more than one type of controlled substance."

¶ 31    In *Bui*, the defendant was found in possession of 4997 pink tablets, weighing 1143.7 grams, that each tested positive for the presence of two different controlled substances: methylenedioxymethamphetamine (MDMA) and methamphetamine. *Id.* at 404. The defendant was subsequently found guilty of both possession of 1500 or more tablets of MDMA with intent to deliver and possession of 900 or more grams of methamphetamine with intent to deliver. *Id.* On appeal, the defendant in *Bui* also argued a one-act, one-crime violation. *Id.* at 426. But noting the amended Act's authorization of multiple convictions for simultaneous possession, this court upheld the defendant's separate convictions. *Id.* at 427. Ms. Coger acknowledges that in *Bui*, this court addressed and rejected the argument that she raises here but argues it was wrongly decided.

¶ 32    Ms. Coger offers several compelling reasons why we should not follow *Bui* or continue

to allow the State to prosecute a single sale of a blended or compound substance as two separate crimes.

¶ 33     First, this was not at all the issue in *Manning*, which was the fact pattern that the legislature sought to address when it amended the Act. In *Manning*, the defendant simultaneously possessed two different, completely separate controlled substances—he just happened to possess them both at the same time. In *Bui*, and in Ms. Coger's case, the defendant possessed or delivered one controlled substance which was a blend or what Ms. Coger refers to as a "compound" of two controlled substances.

¶ 34     Also, treating this blend or compound as two separate crimes does nothing to further the purpose of the Act in terms of discouraging drug use and increasing severity based on the amount of drugs a defendant puts into the marketplace. As Ms. Coger points out, the user of this blend or compound could not separate the drug into two narcotics for separate use. Each of the packets represented one, and only one, inseparable drug blend.

¶ 35     Third, the statute under which Ms. Coger was charged criminalizes the delivery of specific amounts of a "substance containing" certain illegal drugs. 720 ILCS 570/401(d) (West 2014). Our supreme court has held that this language means that we include all ingredients in the "substance" when we determine the weight of the drugs for sentencing purposes. *People v. McCarty*, 223 Ill. 2d 109, 125 (2006). At the same time, the State asks us to separate out the various ingredients discerned after testing and convict the defendant for multiple crimes based on these component parts. Following this reasoning, we would be aggregating the ingredients in the "substance" for purposes of weight but separating those ingredients when such separation can lay the foundation for multiple crimes. This is an inconsistency that can only work to the detriment of a criminal defendant.

¶ 36    Finally, Ms. Coger's convictions for two crimes reads the knowledge requirement out of the statute. We have recognized that selling narcotics is not "an absolute liability offense," and the State must prove that the defendant knew that what he or she was selling was a controlled substance. *People v. Patel*, 2013 IL App (4th) 121111, ¶ 33; *People v. Chatha*, 2015 IL App (4th) 130652, ¶ 49. The State points out that we have also held that it is not necessary for the State to prove that the defendant knew the particular drug involved so long as the State proves that the defendant knew he or she was delivering a controlled substance. *People v. James*, 38 Ill. App. 3d 594, 596-97 (1976).

¶ 37    Here, the State's evidence was that Officer Mason requested "blows," which he understood to be a street term for heroin, so there can be no question that Ms. Coger had knowledge that what she was selling was a controlled substance, even if she did not know the precise composition of that substance. But there was no evidence that Ms. Coger knew that she was in fact selling not one but *two* controlled substances. Thus, the knowledge requirement was not met for the sale of two controlled substances.

¶ 38    For all of these reasons, we respectfully disagree with *Bui*, and we vacate Ms. Coger's conviction for the delivery of cocaine. Because no sentence was imposed on count IV, there is no need to modify her sentence. However, we order that her mittimus be corrected to reflect only one conviction in his case.

¶ 39                        IV. CONCLUSION

¶ 40    For the foregoing reasons, we affirm Ms. Coger's conviction for delivery of less than one gram of heroin (count III), vacate her conviction for delivery of less than one gram of cocaine (count IV), and order the mittimus be corrected to reflect only one conviction.

¶ 41    Affirmed in part and reversed in part; mittimus corrected.