2021 IL App (1st) 181283-U

No. 1-18-1283

Order filed March 31, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 6003-02 |
| | ) | |
| TERRENCE WILSON, | ) | Honorable |
| | ) | Mauricio Araujo, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mary Mikva and Justice Sheldon Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We find the State proved defendant was guilty of constructive possession of a controlled substance, however, the trial court erred in determining whether the two counts of intent to deliver a controlled substance was in violation of the one-act, one-crime doctrine. We vacate defendant's intent to deliver fentanyl and affirm his intent to deliver heroin conviction. We affirm in part and reversed in part.

¶ 2    Defendant Terrance Wilson was convicted of one count of possession of heroin with the

intent to deliver (720 ILCS 570/401 (c)(1) (West 2016)), and one count of possession of fentanyl

with the intent to deliver (720 ILCS 570/401(c) (1.5) (West 2016)) following a joint bench trial with codefendant, Jeffery Eurby. Defendant was sentenced to two years of probation.

¶ 3     On appeal, defendant contends that: (1) the State failed to prove that he constructively possessed the controlled substances found in a car he was driving that was owned by another person; (2) the State failed to prove that he intended to deliver the controlled substances he was found guilty of possessing; and (3) since he was found guilty of possessing a single, compound controlled substance, his two convictions violates the one-act, one-crime doctrine. For the following reasons we affirm in part and reverse in part.

¶ 4                                    BACKGROUND

¶ 5     Prior to trial, on July 27, 2016, defendant filed a motion to sever his trial from codefendant Eurby because he believed having a joint trial was in conflict and inconsistent with his own defense. The motion was granted on August 9, 2017. However, on October 18, 2017, the State filed a motion to reconsider the defense's motion to sever arguing that allowing the motion to sever would deny the State the right to present its case.  Further, the State argued that defendants have not shown that they would be prejudiced otherwise. The motion was granted on October 18, 2017.

¶ 6     The following evidence was presented at defendant's bench trial. Chicago Police Officer Cruz testified that on February 12, 2016, he and his partner, Officer Rejman, while on routine patrol, observed a suspected narcotics transaction. Officer Cruz testified that he saw a white male approach a burgundy vehicle, located at 3950 West Flournoy, and conduct a hand-to-hand transaction with codefendant Eurby, who was on the passenger side of the vehicle. As Officer Cruz drove towards the burgundy vehicle, defendant began driving away. Officer Cruz put on his lights and followed the vehicle. Defendant jumped the curb and sped down the block on the sidewalk before crashing the vehicle into a tree.

¶ 7     Officer Cruz approached the vehicle but did not order the occupants out because he could not see their hands. Officer Cruz saw defendant sitting in the driver's seat and Eurby was in the front passenger seat, which was being approached by his partner Officer Rejman. He requested several times that they put their hands in the air, but they did not comply.  Officer Cruz testified that defendant was bent over with both of his hands towards the bottom of the seat. Officer Cruz then opened the driver's side door and pulled defendant out.  After removing defendant from the vehicle, he handed him to the backup police officer who arrived on scene. Officer Cruz then searched the vehicle and found a baggy with 23 capsules under the driver's seat. He also performed a custodial search of defendant, who had $421 on him which was returned to defendant pursuant to department policy. The capsules were subsequently placed in an inventory envelope under inventory number 13625837.  During direct examination, Officer Cruz positively identified the defendant and Eurby as the two occupants of the vehicle.

¶ 8     On cross-examination, Officer Cruz testified that the collision resulted in the air bag being deployed on the driver side of the vehicle.  Upon looking up the vehicle identification number (VIN) Officer Cruz learned that the vehicle belonged to Delonda Holloway.  He also testified that he did not see defendant handle the bag of narcotics, he did not know who packaged the narcotics, nor did he see defendant place anything under the driver's seat. Additionally, Officer Cruz did not find any loose packaging, a scale, cutting agents, police scanners, or weapons in the vehicle.

¶ 9     Officer Rejman testified that on February 12, 2016, she and her partner, Officer Cruz, observed a narcotics transaction near the 3900 block of Flournoy, which was known for high narcotic sales and usage. Officer Rejman's testimony was consistent with that of Officer Cruz about the pursuit of codefendants. She testified that after the vehicle defendant was driving crashed, she approached the passenger side, where codefendant Eurby was seated, as she called

for backup. She ordered Eurby out of the vehicle and recovered $716 from him after a custodial search.

¶ 10    Jamie Hess, a forensic chemist in the chemistry division of the Illinois State Police (ISP), testified that he received inventory envelope number 13625837 and performed an analysis on 11 of the 23 capsules in the inventory envelope using a gas chromatography-mass spectrometry (GCMS). Hess testified that the 11 capsules contained 3.2 grams of powder cumulatively and that each individual capsule tested positive for both fentanyl and heroin.  While Hess testified that she could not break down the percentage of heroin to fentanyl, she nevertheless estimated that the 23 capsules totaled 6.5 grams of powder. The State rested its case.

¶ 11    On cross-examination, Hess testified that she cleans the syringe used to inject the sample on the GCMS, after each sample. The GCMS, that conducts the analysis is cleaned after every 10 samples.

¶ 12    Defendant moved for a directed verdict, arguing that intent to deliver a controlled substance was not proven beyond a reasonable doubt, citing *People v. Crenshaw*, 202 Ill.App.3d 43 (1990) and *People v. Ellison*, 2013 IL App (1st) 10126, as support. Defendant argued that those cases provided factors that the trial court should consider before determining intent and that weight alone was not sufficient proof of intent. Defendant argued that the State did not show that 6.5 grams was inconsistent with personal use. Defendant sought a finding of not guilty of possession with intent to deliver. Alternatively, he sought a finding of not guilty on intent to deliver.

¶ 13    In ruling on defendant's motion, the trial court indicated that it found *Crenshaw* to be inapplicable here but instructive to when the trial court fails to instruct a jury on a lesser included offense if those factors are present. The trial court denied the motion for directed verdict.

¶ 14    In defendant's case-in-chief, the parties stipulated that the title owner to the burgundy vehicle[1] was Delonda Holloway as reflected by the VIN search ran in this case. The defense then rested its case.

¶ 15    The trial court stated it believed all of the samples contained both heroin and fentanyl and ultimately the State proved that 3.2 grams tested positive for those substances. It noted that intent would have to be determined by circumstantial evidence as referenced in *Ellison*. In interpreting *Ellison*, the trial court noted that the 6.5 grams of drugs on its own, was an amount consistent with personal use. However, the trial court noted when coupled with evidence that the drugs are packaged for sale and there is one additional factor, intent to deliver can be established. The trial court found that there was no evidence that showed the drugs were able to be consumed, such as a "dollar bill" for cocaine, or a "pipe" for crack cocaine. The trial court considered the amount of cash recovered from both defendants totaling $1116 as a factor indicative of intent to deliver. The court found that the possession of that amount of money, the possession of drugs that were packaged for sale, and the hand-to-hand transaction observed by the officers prior to the stop led it to conclude that defendant had the intent to deliver. The trial court noted that defendant was bending over where the drugs were found and was in control of the vehicle at the time. Consequently, Defendant was found guilty on both counts.

¶ 16    Defendant filed a motion to reconsider and/or new trial on November 22, 2017. In his motion, defendant argued that: (1) he was not proven guilty of possession of a controlled substance with intent to deliver beyond a reasonable doubt; (2) that the findings of guilty were against the manifest weight of the evidence; (3) he was denied due process of law; (4) he was denied equal protection of the law; (5) the findings of guilty were based on evidentiary facts that did not exclude

---

[1] The title was from July 22, 2015 to June 6, 2016, belonging to a 2000, four door, burgundy Buick.

every reasonable hypothesis consistent with his innocence; (6) he did not receive a fair and impartial trial; (7) the trial court erred in denying his motion for directed finding; (8) the trial court erred in overruling his objection to certain questions asked by the State; and (9) the trial court erred in sustaining the State's objections to certain questions asked by the defense.

¶ 17    On November 29, 2017, defendant filed a supplemental posttrial motion which restated the arguments from the initial motion. Additionally, the supplemental motion argued that: (1) the trial court erred in sustaining the State's objection to the defense's questioning of Officer Cruz regarding whether there was any mail retrieved from the vehicle that belonged to defendant because the presence or absence of defendant's personal belongings in the vehicle was probative of his control over it and knowledge of its contents; (2) the trial court erred in sustaining the State's objection to the defense's question regarding whether Officer Cruz knew for certain when the suspect items were placed under the seat because the officer had not previously answered the question; (3) the trial court erred in sustaining the State's objection to the defense's question regarding whether Officer Cruz knew when the suspect items were individually packaged; (4) the trial court erred in overruling defendant's objection to the State's question to relevance in regard to Officer Rejman's testimony about narcotics sales and usage in the 3900 block of Flournoy because her testimony was nonresponsive to the question asked and the State did not lay a proper foundation, and; (5) the court erred in rejoining the trials of the defendants because the trial court used information about codefendant Eurby as evidence of defendant's guilt which denied him a fair trial.

¶ 18    At the hearing on the motion to reconsider, defendant argued that the State failed to prove that he possessed heroin or fentanyl. Even though defendant was the driver, he did not own the vehicle. Defendant further argued that although the officers witnessed codefendant's involvement

in a drug transaction, he was not involved in that. Defendant only had $421 on him and there is no evidence that the money was proceeds from narcotic transactions. Defendant also maintained that the weight of the drugs alone was insufficient to establish intent. Lastly, defendant argued that the manner in which the forensic chemist cleaned her equipment resulted in the State being unable to prove that more that a gram of the materials tested positive for heroin and fentanyl. Therefore, the State was unable to seek a sentencing enhancement when it did not prove the weight of the drugs beyond a reasonable doubt. Defendant noted that he was charged with possession with intent to deliver heroin and fentanyl separately, not as a mixture, nor did he receive notice of the amount at issue, which is an element of the offense. Defendant contended that the State should have pled that the heroin and fentanyl were a mixture.

¶ 19    In response, the State argued that forensic chemist Hess performed her testing in accordance with accepted practices within her community. The State also maintained that defendant's conviction for intent to deliver should stand because there was no paraphernalia present to suggest that the defendants were using those drugs. The drugs were individually packaged for sale and the 23 capsules were a substantial amount which would indicate they were for delivery. The State further noted that a substantial amount of money retrieved indicates intent, as well as the hand-to-hand transaction that was observed by the officers. The State also maintained that the defendant was properly convicted of possession based on constructive possession because he had control over, and knowledge of, what was found underneath the driver's seat. Lastly, the State argued the trial court was correct in finding that the State proved that the 3.2 grams contained in each capsule tested positive for both heroin and fentanyl.

¶ 20    The trial court partially granted defendant's motion and revised defendant's convictions to reflect possession with intent to deliver less than three grams of heroin and less than one gram of fentanyl, both Class 2 felonies.

¶ 21    The matter proceeded to sentencing.  After hearing both, evidence presented in aggravation and mitigation, the trial court sentenced defendant to two years of probation, noting his attendance, character and demeanor in court, familial responsibilities, and dedication to his employment as mitigating factors. The judge considered his previous minor criminal history in aggravation.

¶ 22    Defendant filed a motion to reconsider the sentence *instanter*, waiving argument and resting on the motion. The motion argued that: (1) defendant's sentence was excessive given his background and the nature of the offense; (2) the trial court considered matters in aggravation that were implicit in the offense; and (3) the sentence penalized defendant for exercising his right to trial. The trial court denied the motion and this timely appeal followed.

¶ 23                          ANAYLSIS

¶ 24    On appeal, defendant contends that: (1) the State failed to prove that he constructively possessed the controlled substances found in a car he was driving that was owned by another person; (2) the State failed to prove that he intended to deliver the controlled substances he was found guilty of possessing; and (3) since he was found guilty of possessing a single, compound controlled substance, his two convictions violates the one-act, one-crime doctrine.

¶ 25                    A.  Sufficiency of the Evidence

¶ 26                    1. Standard of Review

¶ 27    When reviewing challenges to the sufficiency of the evidence, the reviewing court decides "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*People v. Spencer*, 2012 IL App (1st) 102094, ¶ 16. A conviction does not get a re-trial at this stage and this court will not substitute its judgment for that of the trier of fact. *Id*. Instead, "a conviction will not be set aside unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Id*. Further, "the determination of the weight to be given the witnesses testimony, their credibility, resolution of inconsistencies and conflicts in the evidence, and reasonable inferences to be drawn from the testimony are the responsibility of the trier of fact." *Id*.

¶ 28                                    2. Constructive Possession

¶ 29    Defendant contends he lacks the requisite knowledge for constructive possession. Defendant argues that he did not know about the drugs found underneath the driver's seat and was never identified as handling them. When the officer approached defendant, he was "cowering" in fear and that is why his hands were near the bottom of the seat. Defendant was not seen making furtive gestures. Additionally, fleeing from the police, without other facts, cannot establish knowledge.

¶ 30    Defendant contends he lacks the requisite control for constructive possession. Defendant argues that he is not the owner of the car, owned nothing in the car, was seen driving it for 15 to 20 seconds, and the State did not provide facts on whether the drugs were found within reach of where defendant as seated. Defendant analogizes these facts to those in *People v. Davis*, 50 Ill. App. 3d 163 (1977), which found no possession where a firearm was found under the front seat of the vehicle that the defendant was driving.

¶ 31    The State contends defendant had actual possession because defendant was the driver of the vehicle and had dominion control over the premises. The State also finds that they met the burden for constructive possession as well, because knowledge and control of the drugs included

the following: the size and visibility of the drugs were that of a plastic bag containing 23 smaller capsules of heroin and fentanyl which were located directly underneath where defendant was seated; defendant was the driver of the vehicle and had possession of the keys; defendant defied police verbal commands to put his hands up and instead kept both hands towards the bottom of his seat; defendant fled from the police; and, the defense stipulated to the fact that the car was owned by Delonda Holloway at trial and Holloway is the mother of defendant's child. The State contends that defendant was not "cowering in fear", but the record states he was only "cowering." The State argues the flight of defendant suggests knowledge when considered with all the other evidence presented. Lastly, the State contends *Davis* is distinguishable because the driver in that case borrowed the car for two minutes and a gun was later found under the driver's seat. That defendant didn't flee, make furtive gestures, and the gun was not "readily visible," in contrast to defendant's case.

¶ 32    Despite the State's contention, at trial, the State maintained that defendant possessed the drugs through constructive possession. For actual possession, a defendant must exercise "present personal dominion over the illicit material." *People v. Pittman*, 2014 IL App (1st) 123499, ¶ 36. In *Pittman*, this court held a defendant actually possessed a controlled substance when it was found on his person. *Id*. Here, defendant was not found to have any drugs on his person and no evidence was presented that established that he handled any drugs in any way. Thus, we find that Defendant was not in actual possession of the controlled substances.

¶ 33    Constructive possession is established where there is "the intent and capability to maintain control and dominion over the controlled substance." *Pittman*, 2014 IL App (1st) 123499, ¶ 36. This can be proved with evidence of defendant's knowledge of the controlled substance and the "immediate and exclusive control over the area" where the controlled substances is found. *People*

*v. Jackson*, 2019 IL App 1st 161745, ¶ 27. Knowledge can be inferred by the "surrounding circumstances, such as the defendant's actions, declarations, or other conduct, which indicate that the defendant knew the contraband existed in the place where it was found." *Id.* "Control is established when the defendant has the capability and intent to maintain dominion and control over the contraband." *Id.*

¶ 34    While we acknowledge that there are different reactions to being stopped by the police because of strained relations in certain communities, we nonetheless find that the State has established that the defendant had knowledge that the narcotics were in the vehicle. Absent the many interpretations that both parties have regarding defendant's conduct while being pursued by the police, the surrounding circumstances still show he had knowledge of the drugs. Defendant was stopped only after a narcotics transaction was observed being conducted from the vehicle he was driving, by his codefendant. This, in connection with narcotics being underneath his seat, strongly suggest that defendant had knowledge of them.

¶ 35    Contrary to defendant's contention, this case is not analogous to *Davis* where this court found there was no constructive possession of a firearm because there was no evidence to suggest that defendant had knowledge of the firearm that was found in the car he was driving. *Davis*, 50 Ill. App. 3d at 169. The evidence in that case showed defendant was not seen placing the gun in the car, defendant had borrowed the car, he was in it for only a brief time before it was stopped, no furtive hand gestures were seen, and the gun was not readily visible. *Id. Davis* is distinguishable because it did not have corroborating evidence before the police stop to infer knowledge. Here, as we discussed, the surrounding circumstances do infer that defendant had knowledge of the drugs because of the drug transaction that was observed immediately preceding the police stop. *Jackson*, 2019 IL App 1st 161745, ¶ 27.

¶ 36    We further find that the State demonstrated defendant's control of the capsules of drugs. Defendant's contention that he lacks control because he is not the owner, had nothing in the car, and was only observed in the car for a sort time is unpersuasive. We have held that constructive possession is not diminished by evidence of others' access to the contraband. *Jackson*, 2019 IL App 1st 161745, ¶ 27. Defendant's position and ability to control the location, as the driver of the vehicle who was sitting directly above the drugs, coupled with knowledge that drugs were sold from the vehicle by codefendant, gives rise to an inference that defendant was in possession of the capsules. *Id.* Thus, the State has sufficiently established that defendant was in constructive possession of the drugs in question.

¶ 37                                     2. Intent to Deliver

¶ 38    Defendant contends that the State did not present sufficient evidence to support a conviction for possession of a controlled substance with the intent to deliver.  Defendant contends that the usage of codefendant's prior narcotics transaction was irrelevant to him and could not be used as a factor to determine intent as to defendant. Additionally, defendant contends the following factors demonstrate a lack of intent: the trial court improperly noted that 23 capsules all at the same weight of .3 grams implies sales, when the lab came back with only 11 of those capsules had any illegal drugs; the $421 that was found on him is unable to establish intent because the small quantities of capsules found on him, bears little on his mental state; no evidence was presented to show how the packaging of the controlled substances were associated with the sale of narcotics; the lack of drug paraphernalia is not relevant here since the controlled substances were in capsule form and there was no testimony on how the they are used; that the amount of controlled substances are within the guidelines for personal use, and; there were no known tools associated with drug distribution: gun, police scanner, cutting agents, and scale. Citing *People v. White*, 221 Ill.  2d 1,

16, 18-19 (2006). Defendant seeks to have his conviction reduced to possession of a controlled substance.

¶ 39    The State contends, numerous factors exist that this court can analyze in our determination as to whether sufficient evidence of intent to deliver were presented, citing to the factors contained in *People v. White*, 221 Ill. 2d 1, 16 (2004), which were: (1) the arresting officers observed what they believed to be a narcotics transaction between codefendant, and an unknown male (2) the area the drug exchange took place is known for high narcotic sales and usage, which the arresting officer knew from the high volume of calls and information that he had been given by citizens that live on that block (3) the drugs were packaged in individual capsules; (4) defendant possessed no paraphernalia that would be consistent with personal use of the drugs; (5) defendant possessed $421.00 in cash and the codefendant possessed $716.00 in cash. Based on these factors the State contends that it provided evidence sufficient to prove that defendant had the intent to deliver the capsules of heroin and fentanyl.

¶ 40    In order to establish intent to deliver the State must prove three elements: (1) defendant knew of the narcotics; (2) that the narcotics were in the immediate possession or control of defendant, and; (3) that the defendant intended to deliver them. 720 ILCS 570/401 (West 2016); *Ellison*, 2013 IL App (1st) 101261, ¶ 13.

¶ 41    Intent is typically established through circumstantial evidence, direct evidence has been considered rare to find. *Ellison*, 2013 IL App (1st) 101261, ¶ 14. The following factors are relevant in establishing intent:" (1) whether the quantity of drugs possessed is too large to be reasonably viewed as being for personal consumption, (2) the degree of drug purity, (3) the possession of any weapons, (4) possession and amount of cash, (5) possession of police scanners, beepers or cellular telephones, (6) possession of drug paraphernalia commonly associated with narcotics transactions,

and (7) the manner in which the drug is packaged." *Id*. This list of "factors" is not "exhaustive" or "inflexible." *Id*. See *People v. White*, 221 Ill. 2d 1, 17 (2006), *abrogated on other grounds by People v. Luedemann*, 222 Ill. 2d 530.

¶ 42 Taking the evidence in the light most favorable to the State as we must, we find that the evidence is sufficient to sustain defendant's conviction. *Spencer*, 2012 IL App (1st) 102094, ¶ 16. To determine intent to deliver, these factors change when, as it is here, a defendant is in a vehicle. *People v. Johnson*, 334 Ill. App. 3d 666, 678 (2002). The lack of "paraphernalia, such as scales, cutting instruments, or packaging materials," would not be expected in a moving vehicle. *Id*. Further, other factors present in this case tend to infer that defendant was intent on delivering: defendant was driving the car; he was present for at least one hand-to-hand drug transaction with codefendant and a customer that was observed by police; when the police approached, defendant sped off and was only captured once the vehicle crashed; neither defendant nor Eurby complied with the officers' command to raise their hands and defendant was bent down with his hands near the bottom of his seat; the drugs were found underneath the driver's seat and they were packaged as individual capsules for delivery; and a portion of the capsules tested positive for the presence of two drugs. Additionally, both defendant and Eurby were carrying large sums of money. Considering the evidence in the light most favorable to the State, it is not unreasonable to conclude that defendant was guilty beyond a reasonable doubt of possession with intent to deliver.

¶ 43 B. Violation of the One-Act, One-Crime Doctrine

¶ 44 Defendant contends that the capsules, that he was found guilty of possessing, contained a fentanyl and heroin mixture, which was a blend that cannot be considered two acts; but one. Defendant argues that the two convictions violated the one-act, one crime doctrine, especially given his lack of knowledge, *citing People v. Coger*, 2019 IL App (1st) 163250, ¶ 32. The State,

however, argues that case law clearly lays out the precedence for upholding multiple convictions for simultaneous possession citing *People v. Bui*, 381 Ill. App. 3d 397, 426 (2008). In *Bui*, the defendant's convictions were upheld when the recovered tablets tested positive for both methylenedioxymethamphetamine (MDMA) and methamphetamine and a challenge arguing a violation of the one-act, one-crime doctrine was rejected. A violation of the one-act, one-crime doctrine is a question of law that we review *de novo*. *Coger*, 2019 IL App (1st) 163250, at ¶ 28.

¶ 45    Further, the State contends defendant has forfeited this issue by not including it in a posttrial motion. To preserve an issue for appeal, a defendant must object at trial and include the issue in a posttrial motion. *Bui*, 381 Ill. App. 3d at 405. Defendant acknowledges this issue was not raised previously and seeks to have this court review the issue pursuant to the plain error doctrine.

¶ 46    Under the plain error doctrine, "issues not properly preserved may be considered by a reviewing court under two limited circumstances: (1) where the evidence is closely balanced, so as to preclude argument that an innocent person was wrongfully convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." *Bui*, 381 Ill. App. 3d at 405-06.

¶ 47    In our application of the plain error doctrine to the facts of this case, we find that a violation of the one-act, one-crime doctrine is an error so substantial that it affects the fundamental fairness of the proceeding and requires remediation to preserve the integrity of the judicial process. *Bui*, 381 Ill. App. 3d at 406. Here, the evidence at trial demonstrated that the controlled substance in question was comprised of both heroin and fentanyl. No evidence was presented that showed that defendant had knowledge of both substances being in each capsule. *Bui* provides that a defendant

can be convicted of multiple offenses when the drug is a mixture, however, *Cogan* has expanded on *Bui*, requiring a demonstration of knowledge by the defendant that they knew the controlled substance consisted of specific components. *Coger*, 2019 IL App (1st) 163250, ¶ 37. Based on the facts of this case in light of *Coger*, we can not find that defendant knew that he was selling two controlled substances. Hence, we find that there was only one act and thus one crime.

¶ 48    Because defendant was given probation for all of his convictions, there is no need modify his sentence. We order that defendant's mittimus be corrected to reflect only one conviction for a controlled substance in this case.

¶ 49                                        CONCLUSION

¶ 50    For the foregoing reasons, we affirm defendant's conviction for intent to deliver less than three grams of heroin (count 3), vacate his conviction for intent to deliver less than one gram of fentanyl (count 4), and order the mittimus to reflect one conviction.

¶ 51    Affirmed in part and reversed in part; mittimus corrected.