2021 IL App (2d) 200528-U
No. 2-20-0528
Order filed December 21, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-335 |
| RASAHN A. SOUTHALL, | ) ) | Honorable Robert Tobin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Bridges and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) The trial court did not err in denying defendant's motion to suppress contraband found after a traffic stop; the court properly credited the officer's testimony that he witnessed, prior to the stop, that the front passenger's seatbelt was unfastened. (2) Defendant's separate convictions for possession of heroin and possession of fentanyl violated the one-act, one-crime rule where the substances were blended together; the cause is remanded for the trial court to vacate the conviction on the less serious offense.

¶ 2     Following a stipulated bench trial, defendant, Rasahn A. Southall, was convicted of two counts of drug possession: possession with the intent to deliver 100 grams or more but less than 400 grams of a substance containing heroin (720 ILCS 570/401(a)(1)(B) (West 2018)) and

possession with intent to deliver 100 grams or more but less than 400 grams of a substance containing fentanyl (*id.* § 401(a)(1.5)(B) (West 2018)). The court sentenced him to concurrent 10-year prison terms. Defendant appeals, contending that (1) the trial court erred in denying his motion to suppress where the arresting officer's squad car video contradicted his courtroom testimony and (2) his conviction on the two counts of drug possession violates the one-act, one-crime rule.

¶ 3                                    I. BACKGROUND

¶ 4      Before trial, defendant filed a motion to suppress evidence. At the hearing on the motion, State trooper Greg Melzer testified that on September 13, 2018, he was patrolling Interstate 90 in Boone County when he noticed a red Cadillac drifting within its lane. The tires occasionally touched the lane lines. Melzer was concerned that the driver might be tired, distracted, or impaired, so he began to follow the Cadillac. As he pulled closer to the Cadillac, he saw the front passenger's seatbelt dangling. He continued to follow the Cadillac for a time before initiating a traffic stop. Melzer identified defendant as the Cadillac's driver. There was a female passenger in the front passenger's seat.

¶ 5      Melzer testified that as he approached the Cadillac on foot, he asked defendant when he had taken off his seatbelt. Defendant said that he did so as he was pulling over. On the squad-car video, Melzer says to defendant: "You [defendant], I couldn't tell, but her [the passenger] I could see the belt hanging back here when we pulled to the shoulder." During questioning by defense counsel, Melzer agreed that he said that. However, he clarified that he saw the seatbelt dangling "prior to that."

¶ 6      During questioning by the prosecutor, Melzer clarified that as he "pulled up closer to the vehicle in the right-hand lane," he could "see that the passenger seatbelt was dangling, visible."

He could not see defendant's seatbelt, but he could see that of the female passenger. Defendant testified that he and his passenger did not remove their seatbelts until after Melzer pulled them over and the Cadillac was completely stopped.

¶ 7 The trial court denied the motion to suppress. The court determined that the tires touching the lane line did not provide reasonable grounds for a traffic stop. The court further observed that weaving within one's lane may be reasonable grounds for a stop in certain circumstances but that it did not "necessarily need to make that ruling today" because Melzer testified that the passenger's seatbelt was unfastened before he pulled the car over.

¶ 8 The cause proceeded to a stipulated bench trial. The parties stipulated that Melzer would testify as he did at the suppression hearing. Melzer would further testify that another trooper and his K-9 partner conducted a free-air sniff of the vehicle. The dog alerted to the scent of narcotics in the vehicle, and Melzer found a work glove in the spare-tire compartment. The glove contained two bags, one containing a white, rock-like substance, and one containing a gray substance. Forensic scientist Barbara Schuman would testify that one of the bags contained 97.8 grams of a combination of heroin and fentanyl and the other bag contained 48.3 grams of a combination of heroin and fentanyl.

¶ 9 The court found defendant guilty of two counts of possession with intent to deliver. The prosecutor told the court that the parties had an "agreed disposition," by which defendant would be sentenced to "ten years on each of those counts," with the sentences to run concurrently. Defendant timely appealed.

¶ 10                                    II. ANALYSIS

¶ 11 Defendant first contends that the trial court erred in denying his motion to suppress. He contends that Melzer's testimony that he observed the passenger's seatbelt unfastened while

following defendant's vehicle is contradicted by the squad car video, in which he states that he saw the seatbelt dangling "when [they] pulled to the shoulder."

¶ 12    In reviewing a trial court's ruling on a motion to suppress evidence, we defer to the court's factual findings, reversing those findings only if they are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006) (citing *Ornelas v. United States*, 517 U.S. 690,699 (1996)). However, we review *de novo* the trial court's ultimate legal ruling on whether suppression is warranted. *Id.*

¶ 13    We note initially that Melzer's testimony that he saw the passenger's seatbelt dangling as he approached the Cadillac on the shoulder is not necessarily inconsistent with his having seen it earlier. When confronted by defense counsel with the alleged inconsistency, he testified that he meant that he had seen it earlier, while still following the car on the highway. However, even if the two statements are irreconcilably inconsistent, this merely created a conflict in the evidence for the trial court to resolve. See *id*.

¶ 14    Defendant concedes that it is "not physically impossible" for Melzer to have observed the passenger's seatbelt before initiating the traffic stop, but he deems it "highly improbable." He points to Melzer's testimony that he observed the passenger's seatbelt "dangling" when he was following defendant's car in the right lane. Defendant argues that Melzer was following several car lengths behind at this point and that the seatbelt cannot be seen in the video at this time.

¶ 15    Defendant points to no evidence that contradicts Melzer's testimony. Melzer testified unequivocally that he could see the seatbelt before pulling the car over. He said that he observed the car even before turning on his lights. Moreover, the camera was not at the same angle as Melzer, who, sitting in the left seat of the squad car, was likely closer to defendant's car than the camera. Melzer testified that he saw the seatbelt while he was relatively close to defendant's car.

The trial court found Melzer credible on this point. We defer to the court's credibility determinations, and we will not reverse the court's findings based on a highly speculative analysis of "probabilities."

¶ 16   The trial court reasonably found that Melzer observed a seatbelt violation, providing him with reasonable grounds to stop defendant's car. Indeed, defendant does not dispute that if Melzer saw the passenger's seatbelt unfastened while the car was in motion, Melzer had reasonable grounds for a traffic stop. Defendant does not take issue with the subsequent canine sniff and resulting search of the car. Therefore, the trial court did not err in denying defendant's motion to suppress.

¶ 17   Defendant next contends that the trial court improperly convicted him of two offenses. He notes that he was convicted of and sentenced for possession of 100 or more grams of a substance containing heroin and possession of 100 or more grams of a substance containing fentanyl. He argues that, because the combined weight of the two bags found in his trunk was only approximately 146 grams, his convictions violate the one-act, one-crime rule. Defendant concedes that he did not preserve this issue for review but asks that we consider it under the plain-error doctrine, which provides a limited and narrow exception to the general rule of procedural default (*People v. Rebollar-Vergara*, 2019 IL App (2d) 140871, ¶ 92).

¶ 18   The State responds that defendant's forfeiture of the issue goes beyond mere procedural default; rather, defendant affirmatively agreed to concurrent sentences for two convictions and thus invited the error.

¶ 19   A defendant may not be convicted of multiple offenses when those offenses are based on precisely the same physical act. *People v. Coats*, 2018 IL 121926, ¶ 11. A one-act, one-crime violation falls within the second prong of the plain-error doctrine as an obvious error so serious

that it challenges the integrity of the judicial process. *Id.* ¶ 10. Whether the rule was violated is a question of law that we review *de novo*. *Id.* ¶ 12.

¶ 20 Thus, if defendant was improperly convicted of two offenses based on a single act of possession, plain error occurred and we must vacate the excess conviction despite defendant's forfeiture. We do not accept the State's premise that defendant invited the error by agreeing to accept two concurrent sentences. As noted, an excess conviction challenges the integrity of the judicial process (*id.* ¶ 10). The sentencing agreement was not announced until after the trial court had found defendant guilty of the two offenses. Defendant could not agree to an improper second conviction merely by accepting the State's offer of concurrent 10-year sentences.

¶ 21 Turning to the merits, defendant contends that he could not be convicted of simultaneously possessing more than 100 grams of both heroin and fentanyl when the two substances were mixed and their total combined weight was less than 200 grams. We agree. To explain why, we briefly survey cases involving the simultaneous possession of multiple controlled substances.

¶ 22 In *People v. Manning*, 71 Ill. 2d 132 (1978), the defendant was arrested while in possession of "a variety of pharmaceutical pills and capsules" containing barbiturates and amphetamines. *Id.* at 133. The court held that, in the absence of a clear statutory provision to the contrary, the defendant's possession of multiple controlled substances constituted a single offense. *Id.* at 137.

¶ 23 In the wake of *Manning*, the legislature amended the controlled substances statutes to provide that "persons who violate this Act with respect to the *** possession with intent to deliver *** of more than one type of controlled substance listed herein may accordingly receive multiple convictions and sentences under each Section of this Act." 720 ILCS 570/100 (West 2018); see *People v. Bui*, 381 Ill. App. 3d 397, 427 (2008).

¶ 24    In *Bui*, the defendant was convicted on two counts of possession of a controlled substance with intent to deliver after the police intercepted a package addressed to defendant.  The package held pink pills that contained a mixture of MDMA and methamphetamine.  *Id.* at 401.  The First District held that, in light of the statutory amendment, both convictions could stand.  *Id.* at 427.

¶ 25    In *People v. Coger*, 2019 IL App (1st) 163250, the First District revisited the issue and held that the defendant could not be convicted of two separate offenses for possessing a mixture of cocaine and heroin.  There, the defendant delivered to an undercover officer three foil packets containing a mixture of heroin and cocaine.  *Id.* ¶¶ 3-8.  The court held that, despite the statutory amendment, defendant's possession of the packets constituted only one offense of unlawful possession.  *Id.* ¶¶ 37-28.

¶ 26    The court gave several reasons for its holding.  First, the facts of *Coger*, in which the defendant possessed a blend of controlled substances, were distinguishable from *Manning*, "which was the fact pattern that the legislature sought to address when it amended the Act."  *Id.* ¶ 33.  The court explained:

> "In *Manning*, the defendant simultaneously possessed two different, completely separate controlled substances—he just happened to possess them both at the same time.  In *Bui*, and in [*Coger*], the defendant possessed or delivered one controlled substance which was a blend *** of two controlled substances."  *Id.*

¶ 27    Second, the court noted that treating the possession of that blend as two separate crimes did nothing to further the Act's purpose of "discouraging drug use and increasing severity based on the amount of drugs a defendant puts into the marketplace."  *Id.* ¶ 34.  The user of the compound could not separate it into two narcotics for separate use.  *Id.*  Each packet represented one, and only one, inseparable drug blend.  *Id.*

¶ 28    Third, the court found that its interpretation was mandated by the Act's specific language:

"Third, the statute under which Ms. Coger was charged criminalizes the delivery of specific amounts of a 'substance containing' certain illegal drugs. 720 ILCS 570/401(d) (West 2014). Our supreme court has held that this language means that we include all ingredients in the 'substance' when we determine the weight of the drugs for sentencing purposes. *People v. McCarty*, 223 Ill. 2d 109, 125 (2006). At the same time, the State asks us to separate out the various ingredients discerned after testing and convict the defendant for multiple crimes based on these component parts. Following this reasoning, we would be aggregating the ingredients in the 'substance' for purposes of weight but separating those ingredients when such separation can lay the foundation for multiple crimes. This is an inconsistency that can only work to the detriment of a criminal defendant." *Id.* ¶ 35.

¶ 29    Finally, the court noted that a contrary reading of the statute could relieve the State of proving the requisite mental state of knowledge in the absence of evidence that the defendant knew how many different controlled substances the compound contained. *Id.* ¶ 36.

¶ 30    In *People v. Wilson*, 2021 IL App (1st) 181283-U, the court reiterated its holding in *Coger*. Defendant cites *Coger* and *Wilson* in urging us to vacate one of his convictions. The State insists, however, that both are distinguishable and that *Bui* is the proper analog to this case.

¶ 31    We agree that *Coger* correctly states the law, and we follow it here. As in *Coger*, defendant possessed a mixture containing two controlled substances. The substances could not be separated for individual use. As in *Coger*, to follow the State's logic, "we would be aggregating the ingredients in the 'substance' for purposes of weight but separating those ingredients when such separation can lay the foundation for multiple crimes." *Coger*, 2019 IL App (1st) 163250, ¶ 35. The State points to no evidence that defendant knew the powder contained multiple controlled

substances. The First District in *Coger* correctly declined to follow *Bui,* as that case focused solely on the statutory language permitting multiple convictions for possessing multiple types of substances and did not consider how that language applied in the specific factual context of blended substances.

¶ 32 The State's attempt to distinguish *Coger* is unavailing. The State argues that *Coger* "ignored" that the State does not have to prove that defendant knew the specific type of controlled substance he possessed. This may be true, but to prove a defendant guilty of two counts of possession based on possessing different substances, the State must prove that the defendant knew that he possessed two different substances. In any event, the "knowledge" factor was only one of the factors the *Coger* court considered.

¶ 33 The State, citing *Bui*, again points to the statutory language permitting a defendant who possesses more than one type of controlled substance to receive multiple convictions and sentences. The State, however, ignores that this language was meant to address the situation in *Manning* where a defendant possesses discrete quantities of multiple substances. *Coger* explained why the statute does not logically apply to a situation where a defendant possessed a mix of multiple controlled substances. See *Id.* ¶ 35.

¶ 34 Defendant acknowledges that the different appearance of the powders in the two bags at least permits the inference that they contained different substances, but he argues that this is irrelevant. We agree that the rationale of *Coger* governs this situation, given that the combined weight of the two bags was less than 200 grams. We would still be "aggregating the ingredients in the 'substance' for purposes of weight but separating those ingredients when such separation can lay the foundation for multiple crimes." *Id.*

¶ 35 One of defendant's convictions must be vacated. Generally, we would vacate the less serious conviction. However, the statute prescribes an identical range of penalties for each offense; thus neither is inherently less serious. "When it cannot be determined which of two or more convictions based on a single physical act is the more serious offense, the cause will be remanded to the trial court for that determination." *People v. Artis*, 232 Ill. 2d 156, 177 (2009). Thus, we remand the cause to the trial court to decide which conviction to vacate.

¶ 36                                    III. CONCLUSION

¶ 37 We affirm in part and reverse in part the judgment of the circuit court of Boone County. We remand the cause for further proceedings consistent with this order.

¶ 38 Affirmed in part, vacated in part.

¶ 39 Cause remanded.